**BALTODANO & BALTODANO LLP**
Hernaldo J. Baltodano (SBN 222286)
Email: hjb@bbemploymentlaw.com
Erica Flores Baltodano (SBN 222331)
Email: efb@bbemploymentlaw.com
1411 Marsh Street, Suite 102
San Luis Obispo, California 93401
Phone: (805) 322-3412
Fax:    (805) 322-3413

**BOREN, OSHER & LUFTMAN LLP**
Paul K. Haines (SBN 248226)
Email: phaines@bollaw.com
Fletcher W. Schmidt (SBN 286462)
Email: fschmidt@bollaw.com
5900 Wilshire Blvd., Suite 920
Los Angeles, California 90036
Tel: (323) 937-9900
Fax: (323) 937-9910
Attorneys for Plaintiffs, the Classes,
and Aggrieved Employees

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| MARLYS JEAN TACKER and JENNY GONZALEZ as individuals and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>COMPASS HEALTH, INC., a California Corporation; and DOES 1 through 10,<br><br>Defendant. | CASE NO.<br>2:13−cv−02261−BRO−JCG<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Judge: Hon. Beverly Reid O'Connell<br>Date:  January 6, 2014<br>Time:  1:30 p.m.<br>Dept.:  14 |

1

NOTICE IS HEREBY GIVEN that on January 6, 2014, at 1:30 p.m. or as soon thereafter as the matter may be heard in Courtroom 14 of the United States District Court for the Central District of California before the Honorable Beverly Reid O'Connell, Plaintiffs Marlys Jean Tacker and Jenny Gonzalez ("Plaintiffs") as individuals and on behalf of all others similarly situated, will and hereby do move this Court for entry of an Order pursuant to Fed. R. Civ. Proc. 23(e) and 29 U.S.C. § 216(b):

1. Preliminarily certifying the proposed Settlement Class for settlement purposes under Rule 23(e) of the Federal Rules of Civil Procedure;

2. Preliminarily appointing Plaintiffs as Class Representatives for settlement purposes;

3. Preliminarily appointing Hernaldo J. Baltodano of Baltodano & Baltodano LLP and Paul K. Haines of Boren, Osher & Luftman LLP as Class Counsel for settlement purposes;

4. Preliminarily approving the class action settlement based upon the terms set forth in the Joint Stipulation of Class Action Settlement and Release ("Settlement Agreement");

5. Scheduling a final fairness hearing to consider final approval of the Settlement Agreement, entry of a proposed final judgment, Plaintiffs' counsel's Motion for Reasonable Attorneys' Fees and Costs, and counsel's Motion for the Class Representatives' Incentive Payments;

6. Appointing CPT Group, Inc., as the third-party settlement administrator for mailing notices; and

7. Approving the proposed Class Notice and proposed Claim Form, and an order that they be disseminated to the proposed Settlement Class as provided in the Settlement Agreement.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

This motion is based on this notice of motion, the attached memorandum of points and authorities, the declarations of Hernaldo J. Baltodano and Paul K. Haines and exhibits attached thereto, the declaration of Julie Green and the exhibits attached thereto, the pleadings and other papers filed in this action, and on any further oral or documentary evidence or argument presented at the time of hearing.

Respectfully submitted,

Dated:  November 25, 2013          BALTODANO & BALTODANO LLP

By:  _____
     Hernaldo J. Baltodano, Esq.
     Attorneys for Plaintiffs, the Classes and
     Aggrieved Employees

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

# **TABLE OF CONTENTS**

I.  INTRODUCTION.................................................................1

II.  FACTUAL SUMMARY......................................................3

    A.  Plaintiffs' Claims.....................................................3
    B.  Compass Denies Plaintiffs' Claims................................5
    C.  Procedural History and Informal Discovery Completed.............6

III.  THE SETTLEMENT MERITS PRELIMINARY APPROVAL..............8

    A.  The Settlement Is Fair, Adequate, and Reasonable....................8

        1.  The Strength of Plaintiffs' Case...........................9
        2.  Risk, Expense, Complexity, and Duration of Further Litigation.............................................11
        3.  Risk of Maintaining Class Action Status......................12
        4.  Amount Offered in Settlement Given Realistic Value of Claims...............................................12
        5.  Discovery Completed and the Status of Proceedings.........17
        6.  The Experience and Views of Counsel.......................17

    B.  The Preliminary Approval Standard Is Met........................17

        1.  The Settlement is Within the Range of Possible Approval...18
        2.  The Settlement Resulted from Serious, Informed and Non-Collusive Negotiations........................................18
        3.  The Settlement is Devoid of Obvious Deficiencies...........19

IV.  THE SETTLEMENT MERITS CERTIFICATION..........................22

    A.  Rule 23(a)(1) Numerosity Is Satisfied.............................22
    B.  Rule 23(a)(2) Commonality Is Satisfied............................22
    C.  Rule 23(a)(3) Typicality Is Satisfied..............................23
    D.  Rule 23(a)(4) Adequacy Is Satisfied...............................23
    E.  Rule 23(b)(3) Predominance Is Satisfied For Settlement Purposes..............................................................24

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

V.    THE PROPOSED NOTICE PROCESS SATISFIES DUE PROCESS....25

VI.   CONCLUSION.................................................................25

### TABLE OF AUTHORITES

### CASES

*Alonzo v. Maximus, Inc.,* 832 F.Supp.2d 1122 (C.D. Cal. 2011)............................ 6

*Amchem v. Windsor,* 521 U.S. 591 (1997)................................................. 24

*Angeles v. U.S. Airways, Inc.*, Case No. C 12-05860 CRB, 2013 WL 622032
(N.D. Cal. Feb. 19, 2013)...........................................................6,15

*Autozone, Inc., Wage and Hour Employment Practices Litigation,* 289 F.R.D. 526
(N.D. Cal. 2012)....................................................................22

*Brinker v. Superior Court,* 53 Cal.4th 1004 (2012).........................4,10,13, 22

*Chu v. Wells Fargo Investments, LLC,* Case Nos. C 05-4526 MHP, C 06-7924
MHP, 2011 WL 672645 (N.D. Cal. February 16, 2011) ........................................ 21

*Churchill Village, L.L.C. v. General Electric,* 361 F.3d 566 (9th Cir. 2004)........ 25

*Class Plaintiffs v. Seattle,* 955 F.2d 1268 (9th Cir. 1992) ........................ 18

*Cunningham v. Leslie's Poolmart, Inc. et al.*, Case No. CV 13-2122 CAS (CWx),
2013 WL 3233211 (C.D. Cal. June 25, 2013) ........................................ 16

*Eisen v. Carlisle & Jacqueline,* 417 U.S. 156 (1974)............................... 25

*Elliot v. Spherion Pacific Work, LLC,* 572 F.Supp.2d 1169 (C.D. Cal. 2008)...... 10

*Faulkinbury v. Boyd & Associates, Inc.*, 216 Cal.App.4th 220 (2013) ................ 22

*First Capital Holdings Corp. Financial Products,* Case No. MDL No. 901, 1992
WL 226321 (C.D. Cal. June 10, 1992) ........................................ 18

*Fleming v. Covidien,* Case No. ED CV10-01487 RGK (OPx), Document 236, filed
August 12, 2011 ........................................ 16

*Franklin v. Kaypro Corp.*, 884 F.2d 1222 (9th Cir. 1989) ........................ 8

*Gribble v. Cool Transports Inc.*, No. CV 06-04863 GAF SHx, 2008 WL 5281665
(C.D. Cal. December 15, 2008)........................................ 17

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).........................23,25

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

*Huntington Memorial Hospital v. Superior Court*, 131 Cal.App.4th 893 (2005)...4

*Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258 (S.D. Cal. 1988)......................22

*Lazarin v. Pro Unlimited, Inc.*, Case No. C11-03609 HRL, 2013 WL 3541217
(N.D. Cal. July 11, 2013) .............................................................. 21

*Leyva v. Medline Industries, Inc.*, 716 F.3d 510 (9th Cir. 2013)...........................24

*Linney v. Cellular Alaska Partnership*, 151 F.3d 1234 (9th Cir. 1998) ................ 16

*Mego Financial Corp. Securities Litig.*, 213 F.3d 454 (9th Cir. 2000)................ 18

*Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988 (9th Cir. 2010)...22

*Morris v. Lifescan, Inc.*, 54 Fed.Appx. 663 (9th Cir. 2003) ................................. 22

*National Rural Tele. Coop. v. DIRECTTV, Inc.*, 221 F.R.D. 523
(C.D. Cal. 2004)........................................................................11

*Nelson v. The Sports Authority,* Case No. C 11-4724 SBA, 2014 WL 3388534
(N.D. Cal. July 8, 2013) ............................................................... 10

*Pacific Enterprises Securities Litigation*, 47 F.3d 373 (9th Cir. 1995)................ 17

*Portal Software, Inc. Securities Litig.*, Case No. C-03-5138 VRW, 2007 WL
4171201 (N.D. Cal. Nov. 26, 2007)................................................ 12

*Provine v. Office Depot, Inc.*, No. C 11-00903 SI, 2012 WL 2711085
(N.D. Cal. July 6, 2012) ............................................................... 15

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2003)...........9,16, 21

*Schiller v. David's Bridal, Inc.*, Case No. 1:10-cv-00616-AWI-SKO, 2012
WL 2117001 (E.D. Cal. June 11, 2012)......................................... 20

*Temple v. Guardsmark LLC*, Case No. C 09-02124 SI, 2011 WL 723611
(N.D. Cal. Feb. 22, 2011)............................................................. 13

*Thurman v. Bayshore Transit Management, Inc.*, 203 Cal.App.4th 1112 (2012). 16

*Villacres v. ABM Industries, Inc.*, 384 Fed.Appx. 626 (9th Cir. 2010)................ 10

*Washington v. Joe's Crab Shack*, 271 F.R.D. 629 (N.D. Cal. 2010) ................... 13

*Willner v. Manpower Inc.*, Case No. C 11-02846 JSW, 2012 WL 1570789
(N.D. Cal. May 3, 2012)........................................................11,15

iii

## STATUTES

29 Code of Federal Regulations § 548.305 ........................................... 5, 9

29 Code of Federal Regulations 778.211(c) ........................................... 3

29 United States Code § 207(e)(3) ...................................................... 5, 9

California Business & Professions Code § 17200 ............................... 1

California Code of Regulations § 13520 .............................................. 10

California Labor Code § 203 ............................................................... 5

California Labor Code § 226 ...............................................................5,10

California Labor Code § 226.7 .............................................................4

California Labor Code § 226.7(b) ....................................................... 4

California Labor Code §2698 ............................................................. 2, 5

California Labor Code § 2699(e)(2) .................................................... 11

Wage Order 5-2001, §11(D) ............................................................ 5, 14

Wage Order 5-2001, §12(A) ...............................................................4,10

## OTHER AUTHORITIES

DLSE Opinion Letter No. 1991.02.13 ................................................ 6

*Manual for Complex Litigation (Third)* § 30.41 ............................... 8

Newberg on Class Actions (4th ed. 2013) § 11:24-25 ....................... 18

Newberg on Class Actions (4th ed. 2013) §14.6 ............................... 22

## RULES

Federal Rules of Civil Procedure 23(e)(2) ......................................... 8

Federal Rules of Civil Procedure 30(b)(6) ......................................... 11

Rule 23 of the Federal Rules of Civil Procedure. ............................... 6

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION.

Plaintiffs Marlys Jean Tacker and Jenny Gonzalez ("Plaintiffs"), individually and on behalf of the putative Settlement Class, request that this Court preliminarily approve the Parties' Joint Stipulation of Class Action Settlement and Release ("Settlement Agreement"), entered by Plaintiffs and Defendant Compass Health, Inc. ("Compass"). [1]  Plaintiffs, on behalf of themselves and other hourly, non-exempt employees, filed this lawsuit for unpaid overtime wages, premium pay for meal and rest period violations, related penalty claims, and restitution on behalf of Compass's non-exempt employees throughout California and the United States. [2] The heart of this lawsuit concerns Compass's alleged miscalculation of the regular rate of pay for overtime purposes.

The proposed Settlement Class consists of, "All current and former hourly non-exempt employees in California, who were employed by Compass Health, Inc. from March 29, 2009 until January 1, 2014 or the date of Preliminary Approval, whichever comes later." According to Compass's records, as of October 14, 2013,

---

[1] The proposed Joint Stipulation of Class Action Settlement and Release is attached as Exhibit B to the Declaration of Hernaldo J. Baltodano ("Baltodano Decl."), filed herewith. The proposed Claim Form is attached as Exhibit 1 and the proposed Class Notice is attached as Exhibit 2, respectively, to the Joint Stipulation. After almost two weeks of reviewing and negotiation various terms of the Settlement Agreement, on November 22, 2013, counsel for Defendant for the first time requested an additional 2 weeks to review the proposed final settlement agreement. However, because the Court ordered that the parties file the Settlement Agreement and Motion for Preliminary Approval by November 25, 2013(*see* Docket Entry No. 16), Plaintiffs filed this motion out of an abudance of caution in order to comply with the Court's order. Plaintiffs will submit a fully executed Settlement Agreement once Defendant and its counsel sign the Settlement Agreement. *See* Baltodano Decl., ¶30.

[2] There are ten claims pled in the Complaint: (1) Failure to pay overtime wages in violation of California law; (2) Failure to pay overtime wages in violation of the Fair Labor Standards Act ("FLSA"); (3) Rest period violations; (4) Meal period violations; (5) Failure to furnish complete and accurate wage statements; (6) Waiting time penalties for the late payment of wages; (7) Failure to maintain accurate records; (8) Unfair Competition under Business & Professions Code § 17200 *et seq.*; (9) Failure to reimburse employees for necessary expenditures; and (10) Civil penalties under PAGA.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

1  the Settlement Class consists of approximately 2,208 current and former hourly

2  non-exempt employees.

3    Following several months of robust legal research and analysis, fact

4  investigation, informal document production, the exchange and analysis of class-

5  wide payroll and timekeeping data for 441 non-exempt employees, and mediation

6  held on October 21, 2013 with Jeffrey Krivis, a highly respected wage and hour

7  class action mediator, and extensive arms-length negotiations, the parties agreed to

8  resolve all of the claims at issue.  If this settlement is approved, Compass will pay

9  a Maximum Settlement Amount of $1.1 million dollars to members of the

10  Settlement Class.  After deductions for proposed court-approved Plaintiffs'

11  incentive payments, settlement administration costs, reasonable attorneys' fees,

12  verified costs, and payment to the California Labor Workforce Development

13  Agency ("CLWDA") for civil penalties under the Private Attorneys General Act

14  ("PAGA"), Labor Code §2698 *et seq.*, and Compass's share of payroll taxes,

15  members of the Settlement Class who file claims will receive significant monetary

16  payments in the face of hotly disputed claims.

17    Among other things, this Settlement provides recovery for 100% of the

18  alleged underpaid overtime wages based on Compass's miscalculation of the

19  regular rate of pay, and provides additional compensation for rest period, meal

20  period and penalty claims.  Payments to Settlement Class members will be

21  allocated based on the proportionate number of compensable work weeks worked

22  by each Settlement Class member as compared to the total number of compensable

23  work weeks worked by all Settlement Class members, and former non-exempt

24  employees will receive a modest multiplier.  The average payment to Settlement

25  Class members is expected to be approximately $319 and will vary depending on

26  the number of compensable work weeks each class member is credited with.

27  Regardless of the number of Settlement Class members who submit valid claim

28  forms, however, the Settlement Class will be guaranteed a collective payout of at

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

least fifty percent (50%) of the Net Settlement Amount. Based on the litigation risks involved, Plaintiffs submit that the proposed settlement is within the range of possible approval given that the proposed settlement reflects a recovery of approximately 37% of Plaintiffs' reasonably forecasted recovery.

As discussed below, the Settlement Agreement and Notice distribution plan were the products of an informed analysis of the claims and defenses, as well as the likelihood of obtaining class certification, and extensive non-collusive and arm's length settlement negotiations by experienced employment counsel. Therefore, Plaintiffs seek (1) preliminary approval of the Settlement Agreement; (2) certification of the Settlement Class; (3) appointment of Plaintiffs as Class Representatives; (4) appointment of Hernaldo J. Baltodano of Baltodano & Baltodano LLP, and Paul K. Haines of Boren Osher & Luftman LLP as Class Counsel; (5) approval of the parties' proposed form and method of notifying members of the Settlement Class; (6) an Order scheduling the hearing date for Final Approval of the Class Settlement, including Plaintiffs' counsel's Motion for Reasonable Attorneys' Fees and Costs, and the Representative Enhancement Payments; and (7) entry of an Order Granting Preliminary Approval of the Class Action Settlement. Defendants do not oppose this Motion.

## II.   **FACTUAL SUMMARY.**

### A.   **Plaintiffs' Claims.**

Compass, who bills itself as one of the largest healthcare providers on the Central Coast, operates nine skilled nursing facilities throughout San Luis Obispo and Santa Barbara Counties. As an incentive to practice safe workplace habits, Compass provides annual safety bonuses to its hourly non-exempt employees, averaging approximately $300 and up to $1,000 for some employees, with the vast majority of employees receiving a bonus of some amount. However, Compass does not include the value of these bonuses in employees' regular rates of pay, which Plaintiffs assert resulted in a company-wide miscalculation of their overtime

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

1   rates and a systematic underpayment of overtime wages. *See* 29 C.F.R. 778.211(c)

2   ("The bonus, to be excluded under section 7(e)(3)(a), must not be paid 'pursuant to

3   any prior contract, agreement, or promise.'  For example, any bonuses…which are

4   announced to employees to induce them to work more steadily or more rapidly or

5   more efficiently or to remain with the firm are regarded as part of the regular rate

6   of pay…They must be included in the regular rate of pay."); *Huntington Memorial*

7   *Hospital v. Superior Court*, 131 Cal.App.4th 893, 904 (2005) ("lump-sum bonuses

8   based on improvements in plant safety and production efficiency are not within

9   statutory exclusions and must be included in regular rate")(internal citations

10  omitted).  Because Compass failed to include the value of the promised safety

11  bonuses in the regular rate for overtime purposes, Plaintiffs assert that Compass

12  failed to pay all overtime wages to its non-exempt employees.

13          Moreover, because Compass maintains a facially unlawful rest period policy

14  that fails to give effect to the "major fraction" language of Industrial Welfare

15  Commission Wage Order 5-2001 ("Wage Order 5"),[3] Plaintiffs assert that they and

16  other hourly non-exempt employees were not provided with all rest periods to

17  which they were entitled. *See Brinker v. Superior Court*, 53 Cal.4th 1004, 1028-

18  1029 (2012) (stating that employers must provide an employee with a 10 minute

19  rest break for every four hours worked or "major fraction thereof," where "major

20  fraction" is equivalent to 2.01 hours).  Despite the failure to authorize and permit

21  all required rest periods, Plaintiffs assert that Compass failed to pay the required

22  premium pay under Labor Code § 226.7 in lieu of providing all required rest

23  periods.[4]  Plaintiffs also assert that Compass maintained a facially unlawful meal

24  _____

25  [3] *See* IWC Wage Order 5-2001, §12(A) ("The authorized rest period time shall be based on the
    total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major

26  fraction thereof.").

27  [4] Cal. Labor Code § 226.7(b) ("If an employer fails to provide an employee a meal period or rest
    period in accordance with an applicable order of the Industrial Welfare Commission, the

28  employer shall pay the employee one additional hour of pay at the employee's regular rate of
    compensation for each work day that the meal or rest period is not provided.")

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

period policy that resulted in late meal periods and failed to provide second meal periods for shifts exceeding ten hours.[5]  Plaintiffs also claimed that Compass failed to reimburse non-exempt employees for required uniforms.  Because of these predicate violations, Plaintiffs maintained, Compass failed to comply with its final payment and wage statement obligations, in violation of Labor Code §§ 203 and 226.  Moreover, in addition to statutory penalties, Plaintiffs sought civil penalties under PAGA, Labor Code §2698 *et seq.*

## B.  <u>Compass Denies Plaintiffs' Claims.</u>

Compass strenuously denies Plaintiffs' allegations.  Among other things, Compass maintains that it properly calculated and paid all required overtime wages, and need not include the value of the safety bonuses in the regular rate of pay.  For example, Compass maintained that the safety bonuses were discretionary and, therefore, properly excluded from the regular rate of pay. *See* 29 U.S.C. § 207(e)(3) (providing for exclusion of discretionary bonuses from the regular rate). Moreover, Compass maintained that any additional overtime wages due as a result of the alleged miscalculation of the regular rate of pay was *de minimis*. *See, e.g.,* 29 C.F.R. § 548.305 (incremental increases of less than fifty cents per week attributable to adjustments to regular hourly rate not cognizable under the FLSA). Compass also maintained that it complied with all of its meal and rest period obligations.  In this respect, Compass argued that Plaintiffs and the putative class members were provided with the opportunity to take all meal and rest periods and, concerning meal periods specifically, entered into valid and enforceable meal period waivers. *See* IWC Wage Order 5-2001, §11(D) ("Notwithstanding any other provision of this order, employees in the health care industry who work shifts in excess of eight (8) total hours in a workday may voluntarily waive their right to

---

[5] *See Brinker, supra*, 53 Cal.4th at 1049 ("Under the wage order, as under the statute, an employer's obligation is to provide a first meal period after no more than five hours of work and a second meal period after no more than 10 hours of work.")

1   one of their two meal periods.  In order to be valid, any such waiver must be

2   documented in a written agreement that is voluntarily signed by both the employee

3   and the employer.”).

4      Moreover, to the extent that Plaintiffs received wage statements that were

5   allegedly inaccurate or incomplete, Compass maintains that Plaintiffs suffered no

6   actual damage or harm as a result. *See, e.g., Angeles v. U.S. Airways, Inc.*, Case

7   No. C 12-05860 CRB, 2013 WL 622032 at *10 (N.D. Cal. Feb. 19, 2013) (“A

8   plaintiff must adequately plead an injury arising from an employer's failure to

9   provide full and accurate wage statements, and the omission of the required

10   information alone is not sufficient.”).  With respect to Plaintiffs’ claim for waiting

11   time penalties, Compass asserts that its good-faith belief that it need not include

12   bonuses and incentive pay in the regular rate of pay precluded the imposition of

13   waiting time penalties since Plaintiffs could not prove that Compass’s alleged

14   failure to pay all final wages at the time of termination was “willful.” *See, e.g.,*

15   *Alonzo v. Maximus, Inc.,* 832 F.Supp.2d 1122, 1134 (C.D. Cal. 2011) (dismissing

16   waiting time penalty claim based on defendant employer’s miscalculation of the

17   regular rate of pay, stating, “[Defendant’s] presentation of a good faith defense,

18   based in law or fact ... negate[s] a finding of willfulness.”) (alterations in original).

19   Compass also asserted that it need not reimburse non-exempt employees for

20   required uniforms. *See, e.g.*, (DLSE Opinion Letter No. 1991.02.13, p. 1) (stating

21   that employee expenses for white nurse uniforms need not be reimbursed).  For

22   these reasons, Compass asserts that it did not engage in any unfair business

23   practices and denied liability under PAGA.  Finally, Compass maintains that

24   Plaintiffs’ claims were improper for class treatment under Rule 23 of the Federal

25   Rules of Civil Procedure.

26      **C.**  **Procedural History And Informal Discovery Completed.**

27      Plaintiffs filed their complaint on March 29, 2013 in the United States

28   District Court for the Central District of California.  Declaration of Hernaldo J.

Baltodano ("Baltodano Decl."), ¶13.  Within weeks after filing the complaint, Plaintiffs' counsel and counsel for Compass participated in several meetings to discuss the bases of the claims and defenses. *Id.*  Shortly thereafter, the parties began discussing participating in mediation, which included engaging in extensive informal discovery to allow the parties to evaluate potential liability and damages on a class-wide basis. *Id.*  In an effort to facilitate settlement, Plaintiffs' counsel agreed to withhold formally serving the complaint so that Compass could focus its efforts on gathering the documents and information requested by Plaintiffs in connection with mediation. *Id.*; Docket Entry No. 7.  In the interim, Plaintiffs conducted further fact investigation into Compass's meal and rest period practices at its nine facilities, and conducted extensive legal research and analysis of the overtime, meal period, and rest period claims. Baltodano Decl., ¶ 13.  After weeks of negotiation, Compass provided Plaintiffs with the timekeeping and payroll records for 441 employees for the putative class period, which reflected approximately 20% of the entire putative class. *Id.*

In addition to producing thousands of pages of documents for the named Plaintiffs, Compass provided Plaintiffs with company policies, timecard reports data, and employee earning reports for 20% of the entire putative class. Baltodano Decl., ¶ 14.  Compass provided Plaintiffs with further informal information in connection with preparing for mediation regarding the size of the putative class, and various penalty classes. *Id.*  Plaintiffs retained a data analysis professional to analyse all of the payroll and timecard data produced by Compass. *Id.*  Plaintiffs analysed over 118,000 workdays in the putative class period, and conducted a comprehensive analysis of the data. *Id.*  Consequently, Plaintiffs were able to determine the average rate of pay for non-exempt employees, the average value of the annual safety bonuses, and the average number of regular-time, overtime and double-time hours worked for 20% of the entire putative class across a 4-year time period. *Id.*  Using this data, Plaintiffs were able to estimate the total amount of

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

1    alleged unpaid overtime wages by extrapolating their findings to the entire putative

2    class. *Id.* Among other things, Plaintiffs determined the number of "major

3    fraction" shifts that were worked, and determined the frequency of late first meal

4    periods and second meal period violations. *Id.*

5         Plaintiffs' analysis and investigation culminated in mediation on October 21,

6    2013, with Jeffrey Krivis, a highly experienced wage and hour class action

7    mediator in Los Angeles. Baltodano Decl., ¶ 16. Although the parties did not

8    reach agreement at the mediation, Mr. Krivis made a mediator's proposal for a

9    class-wide resolution of Plaintiffs' claims. *Id.* Ultimately, the parties accepted Mr.

10   Krivis's proposal and executed a Memorandum of Understanding outlining the

11   essential terms of the proposed settlement. *Id.* On October 24, 2013, the parties

12   advised the Court that they had reached a class-wide resolution. *See* Docket Entry

13   No. 16. During the weeks that followed, the parties continued negotiating the

14   terms of the proposed class-wide resolution and formalized their agreement and

15   executed the Class Action Settlement Agreement and Joint Stipulation that is now

16   before the Court for preliminary approval. Baltodano Decl. ¶16.

17   **III.   THE SETTLEMENT MERITS PRELIMINARY APPROVAL.**

18        It is the policy of the federal courts to encourage settlement. *See Franklin v.*

19   *Kaypro Corp.*, 884 F.2d 1222, 1225 (9th Cir. 1989). Judicial approval of a class

20   action settlement entails a two-step process: (1) an early (preliminary) review by

21   the Court; and (2) a final review after notice has been distributed to the class

22   members for their comment or objections. *See Manual for Complex Litigation*

23   *(Third)* § 30.41.

24        **A.   The Settlement Is Fair, Adequate, and Reasonable.**

25        To receive judicial approval, a proposed class action settlement must be

26   "fair, reasonable, and adequate." *See* Fed. R. Civ. Proc. 23(e)(2). In making this

27   determination, this Court may consider the following factors: (1) the strength of the

28   plaintiff's case; (2) the risk, expense, complexity, and likely duration of further

8

litigation; (3) the risk of maintaining class action status throughout trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *See Rodriguez, supra,* 563 F.3d at 963.  Plaintiffs address each relevant factor below.[6]

### 1.   The Strength of Plaintiffs' Case.

Although they steadfastly maintain that their claims are meritorious, Plaintiffs acknowledge that Compass possessed formidable defenses to liability. For example, regarding the unpaid overtime claim, Compass asserted that the value of the annual safety bonuses need not be included in the regular rate of pay because they were discretionary bonuses and, therefore, properly excluded.  *See* 29 U.S.C. § 207(e)(3) (providing for exclusion of discretionary bonuses from the regular rate); Baltodano Decl., ¶ 17.  Compass also argued that any unpaid overtime wages resulting from the alleged miscalculation of the regular rate of pay were *de minimis* and need not be compensated. *See, e.g.,* 29 C.F.R. § 548.305; Baltodano Decl., ¶ 17.  With respect to the meal period claims, Compass asserted that it had executed enforceable meal period waivers with its non-exempt hourly employees, whereby these employees had waived their right to one of their meal periods for shifts lasting eight hours or longer.  Baltodano Decl., ¶ 17.  With respect to work shifts between six and eight hours in duration, Compass asserted that the vast majority of meal periods were taken before the end of the fifth hour of work.  *Id.*  Regarding the rest period claim, Compass asserted that it complied with its rest period obligations by making rest periods available in compliance with Wage Order 5 and

---

[6] Because there are no government participants in the instant lawsuit, Plaintiffs have omitted the seventh factor from discussion.  Should the Court grant preliminary approval of the proposed settlement such that notice is given to the Settlement Class members, Plaintiffs will address the eighth factor in their motion for final approval.

9

1    under the standards set forth in *Brinker*.[7]

2        Consequently, Compass asserted that it possessed strong defenses to the

3    derivative waiting time and wage statement penalties, since there existed a "good-

4    faith" dispute that any additional overtime and meal and rest period premium

5    wages were due, thereby precluding the imposition of waiting time penalties. *See*

6    California Code of Regulations § 13520 (a "good-faith" dispute exists to waiting

7    time penalties "when an employer presents a defense, based in law or fact which, if

8    successful, would preclude any recovery on the part of the employee. The fact that

9    a defense is ultimately unsuccessful will not preclude a finding that a good faith

10   dispute did exist."); *Nelson v. The Sports Authority,* Case No. C 11-4724 SBA,

11   2014 WL 3388534 at *5 (N.D. Cal. July 8, 2013) ("Since Plaintiff has not suffered

12   the relevant injury in fact under the waiting-time statutes, Plaintiff lacks standing

13   to claim waiting time penalties…for herself or as a representative of the class").

14   Compass also maintained that Plaintiffs would not be able to prove that all putative

15   class members experienced "injury" as required under Labor Code § 226. *See,*

16   *e.g., Villacres v. ABM Industries, Inc.*, 384 Fed.Appx. 626 (9th Cir. 2010)

17   (granting summary judgment for employer on Labor Code § 226 claim based on

18   lack of injury); Baltodano Decl., ¶ 17.

19       Moreover, since Plaintiffs' claims for civil penalties under PAGA are wholly

20   derivative of the underlying overtime, meal and rest period claims, Compass

21   asserted that the PAGA claims would rise or fall with such claims. *See, e.g., Elliot*

22   *v. Spherion Pacific Work, LLC*, 572 F.Supp.2d 1169, 1181-82 (C.D. Cal. 2008)

23   ("Plaintiff's claim under the Private Attorneys General Act is wholly dependent

24   upon her other claims. Because all of Plaintiff's other claims fail as a matter of

25   law, so does her PAGA claim."); Baltodano Decl., ¶ 17. Compass also asserted

26

27   ───────────────

28   [7] *See Brinker, supra,* 53 Cal.4th at 1028-1029 (2012) (stating that employers must permit a 10
     minute rest break for every four hours worked or "major fraction thereof," where "major
     fraction" is equivalent to 2.01 hours); Baltodano Decl., ¶17.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

1    that any civil penalties were unconstitutional because they were confiscatory since

2    the penalties sought were grossly disproportionate to the actual amount of alleged

3    overtime wages owed. *See, e.g., Willner v. Manpower Inc.*, Case No. C 11-02846

4    JSW, 2012 WL 1570789 at *7 (N.D. Cal. May 3, 2012) ("The Court retains

5    discretion over awards under a PAGA claim and may 'award a lesser amount than

6    the maximum civil penalty amount specified [under PAGA] if, based on the facts

7    and circumstances of the particular case, to do otherwise would result in an award

8    that is unjust, arbitrary and oppressive, or confiscatory.'") (citing Cal. Lab. Code §

9    2699(e)(2)); Baltodano Decl., ¶ 17. In short, Plaintiffs' ability to prevail on, and

10   certify their claims was far from guaranteed. Indeed, "[i]n most situations, unless

11   the settlement is clearly inadequate, its acceptance and approval are preferable to

12   lengthy and expensive litigation with uncertain results." *National Rural Tele.*

13   *Coop. v. DIRECTTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (internal

14   quotations omitted). Thus, this factor supports preliminary approval.

           2.     **Risk, Expense, Complexity, and Duration of Further**

                 **Litigation.**

17         This factor also weighs in favor of preliminary approval. Although the

18   parties had engaged in a significant amount of informal discovery and class-wide

19   data analysis, the parties had not commenced formal written and deposition

20   discovery. Baltodano Decl., ¶18. Plaintiffs intended to depose Compass's FRCP

21   30(b)(6) witnesses on all topics related to Compass's policies for payment of

22   bonuses, calculation of the regular rate of pay, and meal and rest period practices.

23   *Id.* On the other hand, Compass planned to depose scores of employees and move

24   for summary adjudication on all or some of the claims. *Id.* Moreover, preparation

25   for class certification and trial remained for the parties as well as the prospect of

26   appeals in the wake of a disputed class certification ruling for Plaintiffs and/or

27   adverse summary judgment ruling. *Id.* As a result, the parties would incur

28   considerably more attorneys' fees and costs through trial. *Id.* This settlement

1  avoids those risks and the accompanying expense. *See, e.g., In re Portal Software,*
2  *Inc. Securities Litig.*, Case No. C-03-5138 VRW, 2007 WL 4171201 at *3 (N.D.
3  Cal. Nov. 26, 2007) (noting that the "inherent risks of proceeding to summary
4  judgment, trial and appeal also support the settlement"). Thus, this factor favors
5  preliminary approval.

6        **3.**    **Risk of Maintaining Class Action Status.**

7        Plaintiffs had not yet filed their motion for class certification in light of the
8  parties' decision to pursue mediation. Had the Court certified any claims,
9  however, Compass would seek to decertify the claims. Absent settlement, there
10 was a risk that there would not be a certified class at the time of trial. Thus, this
11 factor, too, supports preliminary approval of the settlement.

12       **4.**    **Amount Offered in Settlement Given Realistic Value of**
13       **Claims.**

14       This proposed settlement provides a fair and reasonable monetary recovery
15 for the Settlement Class in the face of hotly disputed claims. Thus, preliminary
16 approval is appropriate. Regarding the overtime claim, Plaintiffs' data analysis
17 revealed that the putative class members worked an average of 1,096 total hours
18 per year, 34.7 annual overtime hours, 9.6 annual double time hours, and received
19 an average safety bonus of $300. Baltodano Decl., ¶ 19. According to Plaintiffs'
20 calculations, Defendants underpaid overtime wages to the putative class by
21 approximately $65,000, calculated as follows:

22       $.2737 hourly increase * 0.5 OT Premium * 34.7 OT hours = $4.75
23 underpaid OT

24       $.2737 hourly increase * 9.6 double time hours = $2.63 underpaid DT
25       $4.75 + $2.63 = $7.38 in underpaid OT and DT per employee, per year
26       $7.38 * 4 years * 2,208 employees = **$65,180.16** total potential underpaid
27 overtime wages. Baltodano Decl., ¶ 19. This figure assumes a 100% probability
28 of prevailing on the merits and certification. *Id.*

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

1    With respect to the rest period claim, Compass provided timekeeping

2   records for approximately 441 non-exempt employees, which reflected 45,709

3   "major fraction" shifts worked by putative class members.  Baltodano Decl., ¶ 20.

4   Extrapolated to the remainder of the putative class, Plaintiffs estimated 237,040

5   shifts which reflected a "major fraction" of a four-hour period worked during the

6   putative class period.  *Id.*  Based on an average hourly rate of pay of $14.67 for

7   non-exempt employees, Plaintiffs calculated Compass's maximum potential rest

8   period exposure as follows:

9        237,040 rest period violations * $14.67 rest period penalty payment =

10  $3,477,377.  *Id.*  This figure assumed that Compass failed to make legally

11  compliant rest periods available to non-exempt employees during every single

12  "major fraction" work shift despite Compass's argument that rest periods were

13  made available to non-exempt employees, *see Brinker*, *supra*, 53 Cal.4th at 1028

14  (stating that the employer must merely "authorize and permit employees to take

15  rest periods"), and that any missed rest periods were the result of individual

16  choices rather than a company-wide practice.  Baltodano Decl., ¶ 20.  Moreover,

17  Compass argued that Plaintiffs faced a significant hurdle in certifying the rest

18  period claim because rest periods need not be recorded. *See Washington v. Joe's*

19  *Crab Shack*, 271 F.R.D. 629, 641-42 (N.D. Cal. 2010) (denying certification of rest

20  period claim because the lack of time records with respect to rest periods meant

21  that individualized questions would predominate); Baltodano Decl., ¶ 20.

22  Consequently, for purposes of mediation, Plaintiffs discounted the value of the rest

23  period claim by 50% for a risk of non-certification and by an additional 50% for a

24  risk of being unsuccessful on the merits. *See, e.g., Temple v. Guardsmark LLC*,

25  Case No. C 09-02124 SI, 2011 WL 723611 at *7 (N.D. Cal. Feb. 22, 2011)

26  (refusing to certify rest period claim because the primary questions were

27  individualized factual questions about how the written policies interacted with

28  company practice.); Baltodano Decl., ¶ 20.  Thus Plaintiffs valued the rest period

1  claim at approximately **$869,344** in potential exposure.  *Id.*

2      With respect to the meal period claim, Compass produced meal period

3  waivers reflecting that non-exempt employees waived their right to a meal period

4  for shifts lasting 6 hours or less, and waived their right to one of their meal periods

5  for shifts lasting eight hours or longer, including shifts exceeding ten hours in

6  length.  *See* IWC Wage Order 5-2001, §11(D) ("Notwithstanding any other

7  provision of this order, employees in the health care industry who work shifts in

8  excess of eight (8) total hours in a workday may voluntarily waive their right to

9  one of their two meal periods.  In order to be valid, any such waiver must be

10  documented in a written agreement that is voluntarily signed by both the employee

11  and the employer."); Baltodano Decl., ¶ 21.  With respect to shifts between six and

12  eight hours in length, Plaintiffs' data analysis reflected that the vast majority of

13  meal periods were taken before the end of the fifth hour of work.  *Id.*  Therefore,

14  Compass asserted that there was a lack of common evidence to show that any late

15  meal periods were the result of a common policy.  *Id.*  Instead, Compass argued

16  that any meal period violations were the result of individual employee decisions.

17  *Id.*  In light of these facts, Plaintiffs concluded that there was little value to the

18  meal period claim in light of significant obstacles to prevailing on the merits and

19  certification.  *Id.*

20      With respect to the waiting time penalty claim, Compass's records

21  confirmed that there were 1,230 former non-exempt employees in the putative

22  class who separated their employment with Compass within the three years

23  immediately preceding the filing of the Complaint.  Baltodano Decl., ¶ 22.  Based

24  on an average hourly rate of pay of $14.67, Plaintiffs estimated the average waiting

25  time penalty per employee to be approximately $3,521 ($14.67 * 8 hours * 30

26  days).  *Id.*  Therefore, Plaintiffs estimated Compass's potential waiting time

27  penalty exposure as follows:

28      1,230 separated employees * $3,521 average waiting time penalty =

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

$4,330,830. *Id.* However, based on Compass's potential defenses (*see* Section III(A)(1), *supra*), Plaintiffs discounted the value of the waiting time penalty claim by 50% in the event of an adverse certification ruling and further discounted the claim by 50% to account for an adverse merits ruling, to arrive at **$1,082,707.** [8]

With respect to wage statement penalties, Compass's data also reflected that there were approximately 890 non-exempt employees employed by Compass during the one year statute of limitations period for the wage statement claim, and 43 pay periods during that same time span.  Baltodano Decl., ¶ 23.  Thus, Plaintiffs estimated the wage statement penalties as follows:

890 initial violations * $50 = $44,500

37,380 subsequent violations * $100 = $3,738,000

Total potential exposure for inaccurate wage statements = $3,738,000 *Id.* However, again based on Compass's defenses to certification and the merits, Plaintiffs discounted the value of the wage statement penalty claim by 50% for a risk of an adverse certification ruling and an additional 50% to account for an adverse merits ruling, for a projected total of **$934,500**.  *See, e.g., Angeles v. U.S. Airways, Inc.*, No. C 12-05860 CRB, 2013 WL 622032 at *10 (N.D. Cal. Feb. 19, 2013) (dismissing wage statement claim for lack of injury); Baltodano Decl., ¶ 23.

Finally, with respect to PAGA Penalties, Plaintiffs estimated a total PAGA exposure of $11,347,500 for PAGA penalties for the entire class.  Baltodano Decl., ¶ 24.  Since only 25% of this total would go to the aggrieved employees, Plaintiffs used $2,836,875, and discounted that figure by 50% for a risk of losing on the merits and by an additional 50% for the risk of the Court reducing penalties, to arrive at a projected total of **$709,218**.  *See, e.g., Fleming v. Covidien,* Case No. ED CV10-01487 RGK (OPx), Document 236, filed August 12, 2011, at p. 5

---

[8] *See, e.g., Provine v. Office Depot, Inc.*, No. C 11-00903 SI, 2012 WL 2711085 (N.D. Cal. July 6, 2012) (denying certification of waiting time class); *Willner v. Manpower Inc.*, Case No. C 11-02846 JSW, 2012 WL 1570789 at *3 (N.D. Cal. May 3, 2012) (dismissing waiting time claim for lack of wilfulness); Baltodano Decl., ¶ 22.

15

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

1  (reducing PAGA penalties from $2.8 million to $500,000); *Thurman v. Bayshore*

2  *Transit Management, Inc.*, 203 Cal.App.4th 1112, 1135 (2012) (affirming trial

3  court's finding that awarding the maximum PAGA penalties would be unjust);

4  Baltodano Decl., ¶ 24.

5      Using these estimated figures, Plaintiffs predicted that their realistic total

6  recovery for the Classes would be approximately **$2,953,000**, excluding PAGA,[9]

7  and after discounting the claims for non-certification and/or outright dismissal as

8  explained above.  Baltodano Decl., ¶ 25.  The proposed settlement of $1,100,000

9  therefore represents approximately 37% of Plaintiffs' reasonably forecasted

10  recovery, including 100% of the putative class members' actual overtime damages.

11  *Id.*  Given the litigation risks involved, Plaintiffs submit that the proposed

12  settlement is within the realm of being fair, reasonable, and adequate, particularly

13  since the proposed settlement compensates the settlement class members for all of

14  their underpaid overtime wages and provides additional compensation for disputed

15  meal and rest period claims, and related penalty claims.  *Id.*  "The fact that a

16  proposed settlement may only amount to a fraction of the potential recovery does

17  not, in and of itself, mean that the proposed settlement is grossly inadequate and

18  should be disapproved."  *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234,

19  1242 (9th Cir. 1998). *See also Rodriguez, supra*, 563 F.3d at 964 (upholding final

20  settlement approval where settlement represented approximately 30% of the

21  damages estimated by the class expert).

22          **5.    Discovery Completed and the Status of Proceedings.**

23      The parties engaged in a significant amount of informal class-wide

24  discovery and analysis. *See* Baltodano Decl., ¶ 13.  Not only did Compass produce

25

26  [9] Plaintiffs excluded the potential PAGA penalty recovery from the projected Class recovery

27  based on *Cunningham v. Leslie's Poolmart, Inc. et al.*, Case No. CV 13-2122 CAS (CWx), 2013
   WL 3233211 at *6 (C.D. Cal. June 25, 2013) (stating that the portion of PAGA penalties not

28  distributed to the CLWDA does not go to the class of aggrieved employees, but rather to the
   individual employee who brought the action.).

16

1  thousands of pages of records, policies regarding employee hours, work schedules,

2  overtime practices, meal and rest period practices, and payroll and timekeeping

3  data, Compass also provided electronic timekeeping and payroll information for

4  approximately 441 non-exempt employees, reflecting 20% of the putative

5  settlement class, which Plaintiffs statistically analysed. *See* Baltodano Decl., ¶¶ 13-

6  14. It was only after the completion of this informal discovery process that the

7  parties participated in mediation and negotiated the proposed settlement. Baltodano

8  Decl., ¶ 14.  Thus, this factor supports preliminary approval.

### 6.   The Experience and Views of Counsel.

10       "Parties represented by competent counsel are better positioned than courts

11  to produce a settlement that fairly reflects each party's expected outcome in

12  litigation." *In re Pacific Enterprises Securities Litigation*, 47 F.3d 373, 378 (9th

13  Cir. 1995).  Here, Plaintiffs are represented by competent and experienced wage

14  and hour class action counsel who pressed Plaintiffs' claims forward against a

15  large employer who retained experienced defense counsel. *See* Baltodano Decl., ¶¶

16  2-10; Declaration of Paul K. Haines ("Haines Decl."), ¶¶ 2-7.  Therefore, this

17  factor strongly supports preliminary approval. S*ee, e.g., Gribble v. Cool

18  Transports Inc.*, No. CV 06-04863 GAF SHx, 2008 WL 5281665 at *9 (C.D. Cal.

19  December 15, 2008) ("Great weight is accorded to the recommendation of counsel,

20  who are most closely acquainted with the facts of the underlying litigation.").

### B.   The Preliminary Approval Standard Is Met.

22       At this stage, the Court can grant preliminary approval of the settlement and

23  direct that notice be given if the proposed settlement (1) falls within the range of

24  possible approval; (2) appears to be the product of serious, informed and non-

25  collusive negotiations; and (3) has no obvious deficiencies. *See Manual for

26  Complex Litigation (Third)* § 30.41; 4 Newberg et al., Newberg on Class Actions

27  (4th ed. 2013) § 11:24-25.  The Ninth Circuit has a "strong judicial policy that

28  favors settlements, particularly where complex class action litigation is

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

concerned." *See Class Plaintiffs v. Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992). These criteria are met here.

### 1.  The Settlement is Within the Range of Possible Approval.

The proposed settlement reflects approximately 37% of the estimated recovery that the Settlement Class could reasonably expect in light of the significant litigation risks, will compensate the Settlement Class members for 100% of their actual overtime damages, and provides additional compensation for hotly disputed meal and rest period claims and derivative penalty claims.  Thus, Plaintiffs submit that the proposed settlement is within the range of possible approval, such that notice should be provided to the Settlement Class so that they can consider the settlement. *See In Re Mego Financial Corp. Securities Litig.,* 213 F.3d 454, 459 (9th Cir. 2000) ("the Settlement amount of almost $2 million was roughly one-sixth of the potential recovery, which, given the difficulties in proving the case, is fair and adequate").  The Court will have the opportunity to again assess the reasonableness of the settlement after the Settlement Class has had the opportunity to opt-out or object.

### 2.  The Settlement Resulted from Serious, Informed and Non-Collusive Negotiations.

This proposed class-wide settlement is the result of several months of analysis and arm's-length negotiations by counsel and is, therefore, entitled to an initial presumption of fairness. *See In re First Capital Holdings Corp. Financial Products,* Case No. MDL No. 901, 1992 WL 226321 at *2 (C.D. Cal. June 10, 1992) ("Approval of the settlement is discretionary with the court, but there is typically an initial presumption of fairness where the settlement was negotiated at arm's length.").  As discussed above, Plaintiffs thoughtfully vetted the claims at issue, conducted fact investigation, reviewed and analyzed extensive payroll and timecard data, and retained a statistical economist to conduct a statistical analysis of the data to arrive at an estimated damages figure. *See* Baltodano Decl., ¶ 14.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

1  The parties reached this settlement only after mediating before Jeffrey Krivis, an

2  experienced and respected wage and hour class action mediator. Baltodano Decl., ¶

3  16. The parties each supplied Mr. Krivis with detailed mediation briefs outlining

4  their views of the strengths and weaknesses of each claim and defense. *Id.*

5  Plaintiffs' mediation brief included detailed calculations of the damages they

6  would expect the class to be awarded were they to prevail on each claim. *Id.* Even

7  after the mediator's proposal had been accepted by the parties, both sides

8  continued to negotiate the finer points of the deal for several weeks. *Id.* Therefore,

9  this factor also supports preliminary approval.

### 3.   The Settlement is Devoid of Obvious Deficiencies.

11     If the Court preliminarily approves this settlement, Compass will pay a

12  Maximum Settlement Amount ("MSA") of $1.1 million dollars which shall be

13  distributed to the Settlement Class members on a claims-made basis with a

14  guaranteed minimum payment of fifty percent (50%) of the Net Settlement

15  Amount ("NSA") to be distributed to the Settlement Class. The principal terms of

16  the proposed settlement agreement are summarized below:

| | |
|---|---|
| Maximum Settlement Amount: | $1,100,000 |
| Minus Court-approved attorneys' fees (30%): | $330,000 |
| Minus Court-approved costs: | $20,000 |
| Minus Court-approved incentive payments: | $10,000 |
| Minus PAGA settlement allocation: | $10,000 |
| Minus settlement administration costs: | $35,000 |
| **Net Settlement Amount:** | **$695,000** |

24     After deducting amounts for court-approved Plaintiffs' incentive payments,

25  costs of settlement administration, reasonable attorneys' fees and costs, and the

26  PAGA payment to the CLWDA, the settlement requires Compass to pay a NSA of

27  up to $695,000 to all members of the Settlement Class who file valid and timely

28  claim forms. Baltodano Decl., ¶ 26. The Settlement Class members are

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

1  collectively guaranteed at least fifty percent (50%) of the NSA. *Id.* Any remaining

2  unclaimed funds of up to fifty percent (50%) of the NSA will revert to Compass.

3  *Id.*

4      Each settlement class member's projected recovery will be based on the

5  number of her/his Compensable Work Weeks. Baltodano Decl., ¶ 28. A

6  "Compensable Work Week" is defined as a seven-day work week during which a

7  Settlement Class member was actively employed by Compass as a non-exempt,

8  hourly employee during the putative class period. *Id.* If a Settlement Class

9  member was employed for only part of a Compensable Work Week, he or she will

10  be credited with a fraction of the Compensable Work Week, rounded up or down

11  to the nearest two-digit decimal. *Id.* For example, if a Settlement Class member

12  was employed for only one work day during a work week, he or she would be

13  credited with 0.14 Compensable Work Weeks, while if a Settlement Class member

14  was employed for two work days during a work week, he or she would be credited

15  with 0.29 Compensable Work Weeks. *Id.* Moreover, former non-exempt

16  employees will receive a modest .2 multiplier as consideration for release of claims

17  under Labor Code §203. *Id.* Although the average settlement payment is

18  estimated at $319, that figure will vary depending on the number of Compensable

19  Work Weeks the settlement class member is credited with. *Id.* This average

20  recovery per class member is substantial. *See, e.g., Schiller v. David's Bridal, Inc.*,

21  Case No. 1:10-cv-00616-AWI-SKO, 2012 WL 2117001 at *17 (E.D. Cal. June 11,

22  2012) ("Plaintiff notes that Class Members will receive an average of

23  approximately $198.70, with the highest payment to a Class Member being

24  $695.78. Plaintiff contends that this is a substantial recovery where Defendant

25  asserted compelling defenses to liability; Plaintiff also notes several similar actions

26  where the gross recoveries per class member were less than $90 . . . Overall, the

27  Court finds that the results achieved are good").

28      In addition, the parties have agreed to designate $10,000 of the MSA for

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

1  PAGA penalties to the CLWDA, which Plaintiffs submit is appropriate. *See, e.g.,*

2  *Chu v. Wells Fargo Investments, LLC*, Case Nos. C 05-4526 MHP, C 06-7924

3  MHP, 2011 WL 672645 at *1 (N.D. Cal. February 16, 2011) (approving PAGA

4  payment of $7,500 to the CLWDA out of $6.9 million common-fund settlement);

5  *Lazarin v. Pro Unlimited, Inc.*, Case No. C11-03609 HRL, 2013 WL 3541217

6  (N.D. Cal. July 11, 2013) (approving PAGA payment of $7,500 to the CLWDA

7  out of $1.25 million common-fund settlement); Baltodano Decl., ¶ 27.

8       Moreover, the proposed incentive payments of $5,000 to each Plaintiff do

9  not bestow preferential treatment.[10]  Proposed Class Counsel will also file a

10  separate motion for approval of reasonable attorneys' fees not to exceed 30% of

11  the MSA for all past and future attorneys' fees necessary to prosecute, settle and

12  administer the Litigation and this proposed Settlement, and file a separate motion

13  for reasonable, verified litigation costs not to exceed twenty-thousand dollars

14  ($20,000.00).[11]  Because the proposed settlement is devoid of obvious deficiencies,

15  this final factor also supports preliminary approval.

16

---

17  [10] As will be fully briefed at the time of moving for final approval, Plaintiffs' requested incentive
payments are intended to recognize the time and effort that Plaintiffs Gonzalez and Tacker

18  expended on behalf of the Settlement Class. *See Rodriguez v. West Publishing Corp.*, 563 F.3d

19  948, 958 (9th Cir. 2003) ("Incentive awards are fairly typical in class action cases ... and are
intended to compensate class representatives for work done on behalf of the class [and] to make

20  up for financial or reputational risk undertaken in bringing the action.").  Here, both Plaintiffs
provided substantial factual information and documents to Plaintiffs' counsel, assisted in

21  identifying witnesses, and both Plaintiffs attended numerous in-person and telephonic meetings

22  with Plaintiffs' Counsel. Baltodano Decl., ¶ 29.  Moreover, Plaintiffs also agreed to a broader
release of all known and unknown claims including claims which are not wage and hour related.

23  *Id.*

24  [11] Although requests for attorneys' fees amounting to 33 and 1/3% of a common fund are
commonly approved in wage and hour class action settlements, Plaintiff's counsel will only

25  request 30%. *See, e.g., Morris v. Lifescan, Inc.*, 54 Fed.Appx. 663 (9th Cir. 2003) (affirming a
33% award); 4 Newberg et al., Newberg on Class Actions (4th ed. 2013) §14.6 ("Empirical

26  studies show that, regardless whether the percentage method or the lodestar method is used, fee
awards in class actions average around one-third of the recovery"). Consistent with the Ninth

27  Circuit's decision in *In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988, 993-
995 (9th Cir. 2010), the motion for attorney's fees and costs, and incentive payments will be

28  filed at least two weeks before the deadline for filing an objection to the settlement.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

## IV.     THE SETTLEMENT MERITS CERTIFICATION.

### A.     Rule 23(a)(1) Numerosity Is Satisfied.

Numerosity is satisfied because there are approximately 2,208 current and former non-exempt employees in the Settlement Class. *See Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988) (holding that classes of 40 or more members satisfy numerosity).

### B.     Rule 23(a)(2) Commonality Is Satisfied.

Plaintiffs maintain that the Settlement Class satisfies commonality because there are common questions of fact and law arising from Plaintiffs' and the Settlement Class members' employment with Compass, such as Compass's alleged miscalculation of the regular rate of pay for overtime purposes, Compass's unlawful rest period policy, and unlawful meal period policy – all of which Plaintiffs contend raise a common core of salient facts. *See, e.g., Faulkinbury v. Boyd & Associates, Inc.*, 216 Cal.App.4th 220, 239 (2013) (certifying regular rate miscalculation claim because "[t]he legality of Boyd's policy of excluding the bonus from calculating overtime wages can be determined on a class-wide basis"); *In re Autozone, Inc., Wage and Hour Employment Practices Litigation*, 289 F.R.D. 526, 534 (N.D. Cal. 2012) (certifying rest period claim, because the claim was "based entirely on the legality of Defendant's uniform written rest break policy"); *Brinker, supra*, 53 Cal.4th at 1033 (certifying meal period class based on "uniform policy consistently applied to a group of employees").

### C.     Rule 23(a)(3) Typicality Is Satisfied.

Here, the claims of named Plaintiffs Tacker and Gonzalez are typical of those held by the members of the proposed Settlement Class.  Plaintiff Tacker was employed by Compass as an hourly non-exempt Residential Aide at Compass's Casa de Flores location from approximately September 2009 to January 2013. Baltodano Decl., ¶ 11.  Plaintiff Gonzalez worked as an hourly non-exempt Certified Nursing Assistant at Compass's Vineyard Hills Health Center and Danish

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

Care Center from approximately March 1999 to February 2013. *Id.* Both Plaintiffs received safety bonuses during their employment, regularly earned overtime compensation, and worked "major fraction" shifts. *Id.* Moreover, Plaintiff Tacker also worked shifts that exceeded ten hours per day. *Id.* Nonetheless, the value of the safety bonuses was never included in their regular rates for overtime purposes, and both Plaintiffs assert that they did not receive all compliant meal and rest periods to which they were entitled when working "major fraction" shifts and shifts exceeding three and one half, five, and ten hours. *Id.* According to the Ninth Circuit, "[u]nder [Rule 23(a)(3)'s] permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members." *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). Because Plaintiffs' claims stem from Compass's alleged class-wide policies and practices regarding overtime calculations, meal and rest periods, provision of wage statements, and payment of final wages, typicality is satisfied.

### D.    Rule 23(a)(4) Adequacy Is Satisfied.

Plaintiffs are also adequate class representatives under Rule 23(a)(4). To satisfy this requirement, Plaintiffs and their counsel must not have conflicts of interest with the proposed class, and must vigorously prosecute the action on behalf of the class. *See Hanlon, supra*, 150 F.3d at 1020. Here, there is no conflict of interest between Plaintiffs and the Settlement Class. As hourly non-exempt employees, Plaintiffs pressed forward claims for unpaid wages and penalties resulting from Compass's alleged unlawful overtime, meal and rest period policies and practices. As detailed above, the proposed settlement reflects a 100% recovery of the Settlement Class members' alleged unpaid overtime wages, and a substantial recovery for meal and rest period violations and related penalties. Given the relatively small amounts at issue, Plaintiffs assert that it is unlikely that any class member, especially a current employee, would have pursued these claims against Compass individually. *See, e.g., Leyva v. Medline Industries, Inc.*, 716 F.3d 510,

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

1  515 (9th Cir. 2013) ("In light of the small size of the putative class members'

2  potential individual monetary recovery, class certification may be the only feasible

3  means for them to adjudicate their claims.  Thus, class certification is also the

4  superior method of adjudication.").  Finally, Plaintiffs' counsel diligently litigated

5  this case, undertook an extensive analysis of the claims and potential damages, and

6  there are no conflicts with the Settlement Class members.  As set forth in the

7  concurrently filed Declarations of Hernaldo J. Baltodano and Paul K. Haines,

8  Plaintiffs' counsel are adequate to represent the proposed Settlement Class given

9  their qualifications, skills, and experience.

10      **E.      Rule 23(b)(3) Predominance Is Satisfied For Settlement**

11              **Purposes.**

12          Predominance tests "whether the proposed classes are sufficiently cohesive

13  to warrant adjudication by [class action] representation." *See Amchem v. Windsor*,

14  521 U.S. 591, 623 (1997).  Because Plaintiffs seek certification of a settlement

15  class, however, manageability of trial need not be considered. *See Id.* at 620.  As

16  full-time hourly non-exempt employees who were allegedly deprived of all

17  overtime wages and subject to Compass's compensation practices, and meal and

18  rest period policies and practices, the proposed Settlement Class is "sufficiently

19  cohesive" since a "common nucleus of facts" and "potential legal remedies"

20  dominate. *See Hanlon*, *supra*, 150 F.3d at 1022.  Plaintiffs assert that this common

21  nucleus of facts includes, for example, Compass's alleged miscalculation of the

22  regular rate, and unlawful meal and rest period policies – all of which predominate

23  over individual questions.

24  **V.      THE PROPOSED NOTICE PROCESS SATISFIES DUE PROCESS.**

25          Due process requires that notice be provided to class members by the best

26  reasonable method available. *See Eisen v. Carlisle & Jacqueline*, 417 U.S. 156

27  (1974).  Notice is satisfactory if it "generally describes the terms of the settlement

28  in sufficient detail to alert those with adverse viewpoints to investigate and to come

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

1  forward and be heard." *See Churchill Village, L.L.C. v. General Electric*, 361 F.3d

2  566, 575 (9th Cir. 2004).  Here, Plaintiffs propose that the settlement be

3  administered by CPT Group, Inc., an experienced class action settlement

4  administrator, who will mail the proposed Class Notice and Claim Forms to

5  Settlement Class members. *See* Declaration of Julie Green and attached exhibits.

6  The proposed Class Notice advises class members of the key terms of the

7  settlement and uniform 60-day deadline to file a claim, opt-out, or file an objection

8  to the settlement, provides a summary of the alleged claims, explains the recovery

9  formula and expected recovery amount for each Settlement Class member,

10  provides contact information for Class Counsel, and notifies them of the date for

11  the final approval hearing.

12  **VI.**   **CONCLUSION.**

13          Based on these reasons, Plaintiffs respectfully request that the Court grant

14  this motion.

15                                    Respectfully submitted,

16  Dated:  November 25, 2013        BALTODANO & BALTODANO LLP

17

18                         By:       _____

19                                    Hernaldo J. Baltodano, Esq.

20                                    Attorneys for Plaintiffs, the Classes and
                                     Aggrieved Employees

21

22

23

24

25

26

27

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL