**BALTODANO & BALTODANO LLP**
Hernaldo J. Baltodano (SBN 222286)
Email: hjb@bbemploymentlaw.com
Erica Flores Baltodano (SBN 222331)
Email: efb@bbemploymentlaw.com
1411 Marsh Street, Suite 102
San Luis Obispo, California 93401
Tel: (805) 322-3412
Fax: (805) 322-3413

**BOREN, OSHER & LUFTMAN LLP**
Paul K. Haines (SBN 248226)
Email: phaines@bollaw.com
Fletcher W. Schmidt (SBN 286462)
Email: fschmidt@bollaw.com
5900 Wilshire Blvd., Suite 920
Los Angeles, California 90036
Tel: (323) 937-9900
Fax: (323) 937-9910
Attorneys for Plaintiffs, the Classes,
and Aggrieved Employees

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| MARLYS JEAN TACKER and JENNY GONZALEZ as individuals and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>COMPASS HEALTH, INC., a California Corporation; and DOES 1 through 10,<br><br>Defendant. | CASE NO. 2:13−cv−02261−BRO−JCG<br><br>**NOTICE OF MOTION AND MOTION FOR CLASS COUNSEL'S REQUEST FOR ATTORNEY'S FEES AND COSTS, AND CLASS REPRESENTATIVE INCENTIVE PAYMENTS**<br><br>Judge: Hon. Beverly Reid O'Connell<br>Date: May 12, 2014<br>Time: 1:30 p.m.<br>Dept.: 14 |

NOTICE OF MOTION & MOTION FOR ATTORNEYS' FEES, COSTS, & INCENTIVE PAYMENTS

NOTICE IS HEREBY GIVEN that on Monday, May 12, 2014 at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 14 of the United States District Court for the Central District of California, located at located at 312 N. Spring Street, Los Angeles, California 90012-4701, before the Honorable Beverly Reid O'Connell, Class Counsel, Hernaldo J. Baltodano and Paul K. Haines, and Class Representatives Marlys Jean Tacker and Jenny Gonzalez ("Plaintiffs") will and do hereby move this Court for an order awarding attorneys' fees and costs, and class representative incentive payments against Defendant Compass Health, Inc. (referred to as "Defendant" or "Compass").

Pursuant to the proposed class action settlement agreement, Class Counsel seek an award of attorneys' fees of $330,000 or 30% of the Maximum Settlement Amount, an award of $20,000 for reimbursement of costs, and an incentive payments of $5,000 to each Plaintiff for compensation for their role in bringing and prosecuting this action and assisting Class Counsel.  Defendant does not oppose the requests for attorneys' fees and costs, and Plaintiffs' incentive payments.

This Motion is based upon the supporting Memorandum of Points and Authorities, the supporting Declarations of Hernaldo J. Baltodano, Paul K. Haines, and Ani Shirinian and exhibits attached thereto, Marlys Jean Tacker, Jenny Gonzalez, and the pleadings, records, and files in this action.

Dated:  April 14, 2014

Respectfully submitted,
BALTODANO & BALTODANO LLP

By: _____
Hernaldo J. Baltodano, Esq.
Attorneys for Plaintiffs, the Classes and
Aggrieved Employees

NOTICE OF MOTION & MOTION FOR ATTORNEYS' FEES, COSTS, & INCENTIVE
PAYMENTS

# **TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................1

II. RELEVANT PROCEDURAL HISTORY AND SUMMARY OF
SETTLEMENT TERMS .......................................................................................2

    A. Brief Procedural History .............................................................................2

    B. This Class Action Settlement Results in Significant Monetary Settlement
Payments Given the Litigation Risks Involved ...............................................3

III. THE COURT SHOULD APPROVE THE FEE AWARD ...............................4

    A. The Attorney Fee Award Is Warranted Under California Law ..................4

    B. The Requested 30% Attorney Fee Award is Justified ...............................8

        1. Class Counsel Obtained a Substantial Recovery for the Class ........8

        2. Class Counsel's Efforts Support the Requested Fee Award ..........10

        3. Class Counsel's Experience and Skill Also Support the Fee
Award ......................................................................................................11

        4. The Complexity of the Issues Also Support the Fee Award ..........12

        5. The Risk of Non-Payment Existed At All Times ..........................13

        6. The Reaction of the Settlement Class Is Positive ..........................13

        7. Class Counsel's Lodestar Reflects a Reasonable Multiplier ..........14

            a. The hours expended on this litigation are reasonable ..........14

            b. The Requested Hourly Rates are Reasonable ......................17

            c. The Lodestar Multiplier is also Reasonable ..........................20

IV. PLAINTIFFS' LITIGATION EXPENSES ARE RECOVERABLE ...............21

V. THE INCENTIVE PAYMENTS SHOULD BE APPROVED ..........................22

VI. CONCLUSION ...............................................................................................24

# <u>TABLE OF AUTHORITIES</u>

## <u>Federal Cases</u>

*Adoma v. The University of Phoenix, Inc.*
      913 F. Supp. 2d 964, 981-982 (E.D. Cal. 2012)........................................6, 12

*Blum v. Stenson*
      465 U.S. 886, 895 (1984) ...............................................................................18

*Chalmers v. City of Los Angeles*
      796 F.2d 1205, 1210-1211 (9th Cir. 1986)....................................................17

*Comcast Corp. v. Behrend*
      133 S. Ct. 1426 (2013)..............................................................................8, 12

*Craft v. County of San Bernardino*
      624 F. Supp. 2d 1113, 1122 (C.D. Cal. 2008)..............................................6, 7

*Fischell v. Equitable Life Assur. Society of U.S.*
      307 F.3d 997, 1008 (9th Cir. 2002) ..............................................................20

*Harris v. Marhoefer*
      24 F.3d 16, 19 (9th Cir. 1994) ..............................................................21, 22

*Hensley v. Eckerhart*
      461 U.S. 424, 433 (1983) ......................................................................14, 15

*In re Activision Sec. Litig.*
      723 F. Supp. 1373, 1377 (N.D. Cal. 1989 .................................................7, 10

*In re Bluetooth Headset Products Liability Litigation*
      654 F.3d 935, 942 (9th Cir. 2011) ..................................................................6

*In re Immune Response Securities Litigation*
      497 F. Supp. 2d 1166, 1177-1178 (S.D. Cal. 2007).....................................22

*In re Mediation Vision Tech. Sec. Litigation*
      913 F. Supp. 1362, 1371 (N.D. Cal. 1996)...................................................22

*In re Nucorp Energy, Inc.*
    764 F.2d 655, 659-660 (9th Cir. 1985).......................................................16

*Ingram v. Oroudjian*
    647 F.3d 925, 928 (9th Cir. 2011) ..........................................................17

*Kasten v. Saint-Gobain Performance Plastics Corp.*
    131 S. Ct. 1325, 1333 (2011).................................................................22

*Leyva v. Medline Industries, Inc.*
    716 F.3d 510, 515 (9th Cir. 2013) ....................................................10, 12

*Moore v. Jas H. Matthews & Co.*
    682 F.2d 830, 839 (9th Cir. 1982) ..........................................................15

*Moreno v. City of Sacramento*
    534 F.3d 1106, 1112 (9th Cir. 2008) .......................................................17

*Parkinson v. Hyundai Motor Am.*
    796 F.Supp.2d 1160, 1172 (C.D. Cal. 2010).............................................18

*Powers v. Eichen*
    229 F.3d 1249, 1256 (9th Cir. 2000) .........................................................7

*Rodriguez v. Disner*
    688 F.3d 645, 653 fn. 6 (9th Cir. 2012)......................................................5

*Rodriguez v. West Publishing Corp.*
    563 F.3d 948, 958-959 (9th Cir. 2009).....................................................23

*Schwarz v. Sec'y of Health & Human Services*
    73 F.3d 895, 906 (9th Cir. 1995) .............................................................18

*Trustees of Const. Indust. & Laborers Health & Welfare Trust v. Redland Ins. Co.*
    460 F.3d 1253, 1258-1259 (9th Cir. 2006)................................................22

*Vizcaino v. Microsoft Corp.*
    290 F.3d 1043, 1050-51 (9th Cir. 2002).............................................6, 7, 20

*Winterrowd v. Am. Gen. Annuity Ins. Co.*
    556 F.3d 815, 827 (9th Cir. 2009) .............................................................5

*Wooldridge v. Marlene Industries Corp.*
    898 F.2d 1169, 1177 (6th Cir. 1990) ..........................................................17

**State Cases**

*21st Century Ins. Co. v. Superior Court*
    47 Cal.4th 511, 520 (2009) .........................................................................6

*Aleman v. AirTouch Cellular*
    209 Cal.App.4th 556, 582 (2012) .................................................................5

*Armenta v. Osmose, Inc.*
    135 Cal.App.4th 314, 324 (2005) ...............................................................10

*Baggett v. Gates*
    32 Cal.3d 128, 144 (1982) ...........................................................................6

*Chavez v. Netflix, Inc.*
    162 Cal.App.4th 43, 66 fn. 11 (2008) ...........................................................7

*Estrada v. FedEx Ground Package System, Inc.*
    154 Cal.App.4th 1, 16-17 (2007) ..................................................................6

*Gentry v. Superior Court*
    42 Cal.4th 443, 460 (2007) .......................................................................22

*Graham v. DaimlerChrysler Corp.*
    34 Cal.4th 553, 580 (2004) .......................................................................13

*Ketchum v. Moses*
    24 Cal.4th 1122, 1132-33 (2001) ...............................................................13

*Press v. Lucky Stores*
    34 Cal.3d 311, 317-318 (1983) ....................................................................5

*Pressler v. Donald L. Bren Co.*
    32 Cal.3d 831, 837 (1982) .........................................................................10

**Federal Statutes**

Fair Labor Standards Act § 216(b) ...................................................................5

Federal Rule of Civil Procedure 23(h) ...........................................................4

**State Statutes**

Code of Civil Procedure § 1021.5.............................................................5, 6

Labor Code § 90.5(a) ........................................................................................5

Labor Code § 203.............................................................................................4

Labor Code § 221.............................................................................................8

Labor Code § 226...........................................................................................21

Labor Code § 1194...........................................................................................5

Labor Code § 2699(g)(1) .................................................................................5

Labor Code § 2802...........................................................................................8

**Unpublished Cases**

*Ashker v. Sayre*
    Case No. 05–03759 CW, 2011 WL 825713 at * 3 (N.D. Cal.
    March 7, 2011)...........................................................................................21

*Barbosa v. Cargill Meat Solutions Corp.*
    Case No. 1:11-cv-00275-SKD, 2013 WL 3340939 at *11-13 (E.D. Cal. July
    2, 2013) ...........................................................................................9, 13, 15

*Bond v. Ferguson Enterprises, Inc.*
    Case No. 1:09-cv-1662 OWW MJS, 2011 WL 2648879 at *12 (E.D. Cal.
    June 30, 2011)......................................................................................19, 20

*Buchanan v. Homeservices Lending, LLC*
    Case No. 11cv0922 L(MDD), 2013 WL 1788579 at *6 (S.D. Cal. April 25,
    2013) ...........................................................................................................8

*Casique v. ValleyCrest Landscape Development, Inc.*
    Case No. CV09-9114 GHK (SSx) (C.D. Cal. November 2, 2011) ................9

*Castro v. UPS Ground Freight, Inc.*
    Case No. CV 08-4898 ODW (CWx) (C.D. Cal. September 10, 2009) .........19

*Charlebois v. Angels Baseball LP*
    Case No. SACV 10-0853 DOC (ANx), 2012 WL 2449849 at *5 (C.D. Cal. May 30, 2012) .............................................................................19

*Cicero v. DirecTV, Inc.*
    Case No. EDCV 07-1182, 2010 WL 2991486 at *6 (C.D. Cal. July 27, 2010) ...........................................................................7

*Cummings v. Starbucks Corp. et al.*
    Case No. CV 12-06345-MWF (FFMx) (C.D. Cal. March 24, 2014).............8

*Fernandez v. Victoria Secret Stores, LLC*
    Case No. CV 06-04149 MMM (SHx), 2008 WL 8150856 at *12 (C.D. Cal. July 21, 2008) .........................................................12, 15, 19, 20

*Forrand v. Fed. Express Corp.*
    Case No. CV 08-1360 DSF (PJWx), 2013 WL 1793951 at *2 (C.D. Cal. April 25, 2013).........................................................................8

*Franco v. Ruiz Products, Inc.*
    Case No. 1:10-cv-02354-SKO, 2012 WL 5941801 at *22 (E.D. Cal. November 27, 2012) .....................................................................21

*Garcia v. Gordon Trucking, Inc.*
    Case No. 1:10-CV-0324 AWI SKO, 2012 WL 5364575 at *10 (E.D. Cal. October 31, 2012) .......................................................................21

*Gonzalez v. USF Reddaway, Inc.*
    Case No. 5:10-CV-01514-AHM-OP (C.D. Cal. April 30, 2012).................19

*In re Taco Bell Wage & Hour Actions*
    Case No. CV F 07–1314 LJO DLB, 2012 WL 5932833 (E.D. Cal.
    November 27, 2012) ...................................................................................8

*Jaime v. Standard Parking Corp.*
    Case No. CV08-04407 AHM (Rzx) (C.D. Cal. June 22, 2011).....................9

*Knight v. Red Door Salons, Inc.*
    Case No. 08-01520 SC, 2009 WL 248367 at *3 (N.D. Cal. Feb. 2, 2009).....7

*McKenzie v. Fed. Express Corp.*
    Case No. CV 10–02420 GAF (PLAx), 2012 WL 2930201 (C.D. Cal. July 2,
    2012) .........................................................................................................21

*McPhail v. First Command Fin. Planning, Inc.*
    Case No. 05cv179-IEG-JMA, 2009 WL 839841 at *6 (S.D. Cal. March 30,
    2009) .........................................................................................................14

*Mora v. Bimbo Bakeries USA, Inc.*
    Case No. CV 10-3748 JAK (RZx) (C.D. Cal. April 16, 2012) .......................9

*Murillo v. Pacific Gas & Elec. Co.*
    Case No. CIV 2:08-1974 WBS GGH, 2010 WL 2889728 at *12 (E.D. Cal.
    July 21, 2010) ......................................................................................12, 13

*Odrick v. Unionbancal Corp.*
    Case No. C 10-5565 SBA, 2012 WL 6019495 at *6 (N.D. Cal. December 3,
    2012) .........................................................................................................21

*Ordoñez v. Radio Shack, Inc.*
    Case No. CV 10-7060-CAS (JCGx), 2013 WL 210223 (C.D. Cal. January
    17, 2013) .....................................................................................................8

*Parks v. Eastwood Ins. Servs., Inc.*
    Case No. SA CV 02-507-GLT (MLGx), 2005 WL 6007833 at *2-3 (C.D.
    Cal. June 28, 2005) ......................................................................................5

*Plows v. Rockwell Collins, Inc.*

    Case No. SACV 10-1936 DOC (MANx) (C.D. Cal. August 6, 2012) .........19

*Schiller v. David's Bridal, Inc.*

    Case No. 1:10-cv-00616-AWI-SKO, 2012 WL 2117001 at *17 (E.D. Cal.

    June 11, 2012)...........................................................................................9, 23

*Singer v. Becton Dickinson and Co.*

    Case No. 08-CV-821-IEG (BLM) (S.D. Cal. December 9, 2009)................23

*Sorenson v. PetSmart, Inc.*

    Case No. 2:06-CV-02674-JAM-DAD (E.D. Cal. December 17, 2008)..........9

*Thieriot v. Celtic Ins. Co.*

    Case No. C 10-04462 (LB), 2011 WL 1522385 (N.D. Cal.

    April 21, 2011).........................................................................................23

*Thieriot v. Celtic Ins. Co.*

    Case No. C 10-04462 LB, 2011 WL 1522385 at *6 (N.D. Cal. April 21,

    2011) ........................................................................................................14

*Williams v. Centerplate, Inc.*

    Case Nos. 11-CV-2159 H-KSC, 12-CV-0008-H-KSC, 2013 WL 4525428 at

    *4 (S.D. Cal. August 26, 2013) ...................................................................9

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION.

On January 6, 2014, this Court granted preliminary approval of this proposed class action settlement.  Now before the Court is Plaintiffs and Class Counsel's motion for an award of attorneys' fees, costs, and incentive payments. Pursuant to the proposed class action settlement agreement, Class Counsel seeks an award of attorneys' fees of 30% of the Maximum Settlement Amount ("MSA") of $1.1 million, or $330,000, and reimbursement for verified costs up to $20,000. Plaintiffs also request that the Court approve their requests for incentive payments based on their efforts in bringing this action and assisting Class Counsel, their general release of claims, and the financial and reputational risk they assumed to vindicate their rights and those of their fellow settlement class members. Compass does not oppose this motion, and not a single class member filed an objection to the requested fees, costs, and incentive payments.

Class Counsel respectfully requests that the Court approve the request for $330,000 in attorneys' fees.  Although the request exceeds the 25% benchmark, the following evidence justifies an upward departure:  (1) the substantial recovery obtained for the settlement class in the face of hotly disputed claims; (2) Class counsel's efforts in aggressively and diligently pressing the class claims; (3) Class counsel's skill and considerable wage and hour class action experience; (4) the complexity of the issues regarding the claims for unpaid wages; (5) the significant risk of non-payment due to Class Counsel taking this matter on a purely contingent basis; (6) not a single class member objected to the requested fees and costs; and (7) the requested 30% fee request yields a reasonable 1.5 multiplier when compared to Class Counsel's lodestar.

///

///

///

## II.     RELEVANT PROCEDURAL HISTORY AND SUMMARY OF SETTLEMENT TERMS.

### A.     Brief Procedural History.

Plaintiffs filed this lawsuit on March 29, 2013.  Within weeks after filing the complaint, Plaintiffs' counsel and counsel for Compass participated in several conferences to discuss the bases of the claims and defenses.   Shortly thereafter, the parties began discussing participating in mediation, which included engaging in extensive informal discovery to allow the parties to evaluate potential liability and damages on a class-wide basis.  In an effort to facilitate settlement, Plaintiffs' counsel agreed to withhold formally serving the complaint so that Compass could focus its efforts on gathering the documents and information requested by Plaintiffs in connection with mediation. Docket Entry ("DE") No. 7.  In the interim, Plaintiffs conducted further fact investigation into Compass's meal and rest period practices at its nine facilities, and conducted extensive legal research and analysis of the overtime, meal period, and rest period claims.

After weeks of negotiation, Compass produced over two-thousand documents consisting of records for the named Plaintiffs, company policies, and timecard reports and employee earning reports for 20% of the entire putative class.  Compass also provided Plaintiffs with further informal information in connection with preparing for mediation regarding the size of the putative class, and various penalty classes.  Plaintiffs retained a data analysis professional to comprehensively analyse the payroll and timecard data sample produced by Compass, including over 118,000 workdays in the putative class period.  As a result, Plaintiffs were able to determine the average rate of pay for non-exempt employees, the average value of the annual safety bonuses that were excluded from the regular rate of pay, and the average number of regular-time, overtime and double-time hours worked for 20% of the entire putative class across a 4-year time period.   Using this data, Plaintiffs were able to estimate the total amount of

NOTICE OF MOTION & MOTION FOR ATTORNEYS' FEES, COSTS, & INCENTIVE PAYMENTS

alleged unpaid overtime wages by extrapolating their findings to the entire putative class.  Plaintiffs also determined the number of "major fraction" shifts that were worked, and determined the frequency of late first meal periods and second meal period violations among the putative class.

Plaintiffs' analysis and investigation culminated in mediation on October 21, 2013, with Jeffrey Krivis, an experienced wage and hour class action mediator in Los Angeles.  Although the parties did not reach agreement at the mediation, Mr. Krivis made a mediator's proposal for a class-wide resolution of Plaintiffs' claims.  Ultimately, the parties accepted Mr. Krivis' proposal and executed a Memorandum of Understanding outlining the essential terms of the proposed settlement.  On October 24, 2013, the parties advised the Court that they had reached a class-wide resolution. *See* DE No. 16.  The Court set November 25, 2013, as the deadline for Plaintiffs to file their motion for preliminary approval of the class action settlement. *See* DE No. 17.  During the weeks that followed, the parties continued negotiating the terms of the proposed class-wide resolution and formalized their agreement and executed the Class Action Settlement Agreement and Joint Stipulation.

Plaintiffs timely filed their motion for preliminary approval on November 25, 2013. *See* DE Nos. 18, 20.  The motion was heard on January 6, 2014, and the Court granted preliminary approval of the class action settlement, appointed Plaintiffs as Class Representatives, and appointed Hernaldo J. Baltodano and Paul K. Haines as Class Counsel on January 6, 2014. *See* DE No. 27.

**B.**     **This Class Action Settlement Results in Significant Monetary Settlement Payments Given the Litigation Risks Involved.**

Compass has agreed to pay a MSA of $1.1 million to the settlement class. After deducting amounts for court-approved Plaintiffs' incentive payments, costs of settlement administration, attorneys' fees and costs, and the PAGA payment to the CLWDA, the settlement requires Compass to pay a Net Settlement Amount

NOTICE OF MOTION & MOTION FOR ATTORNEYS' FEES, COSTS, & INCENTIVE PAYMENTS

("NSA") of up to $700,500 to all members of the Settlement Class who filed valid and timely claim forms.   The Settlement Class members are collectively guaranteed at least fifty percent (50%) of the NSA.  Any remaining unclaimed funds of up to fifty percent (50%) of the NSA will revert to Compass.

Each settlement class member's projected recovery is based on the number of her/his Compensable Work Weeks.  A "Compensable Work Week" is defined as a seven-day work week during which a Settlement Class member was actively employed by Compass as a non-exempt, hourly employee during the putative class period.  If a Settlement Class member was employed for only part of a Compensable Work Week, he or she is credited with a fraction of the Compensable Work Week, rounded up or down to the nearest two-digit decimal. For example, if a Settlement Class member was employed for only one work day during a work week, he or she is credited with 0.14 Compensable Work Weeks, while if a Settlement Class member was employed for two work days during a work week, he or she is credited with 0.29 Compensable Work Weeks.  Moreover, former non-exempt employees receive a modest .2 multiplier as consideration for release of claims under Labor Code §203.   Based on the number of valid claims filed as of the date of the filing of this motion, the average settlement payment is estimated at $428.70 and the highest payment is valued at $1,061.80, which is substantial given the litigation risks involved.   These settlement payments are on par and exceed settlement payments in other judicially-approved wage and hour class settlements.  *See* Section III.B.1, *infra*.

## III.   THE COURT SHOULD APPROVE THE FEE AWARD.

## A.   The Attorney Fee Award Is Warranted Under California Law.

Federal Rule of Civil Procedure 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorney's fees and non taxable costs that are authorized by law or by the parties' agreement." *See* Fed. R. Civ. Proc. 23(h). Because Plaintiffs pled California Labor Code claims, the Ninth Circuit applies

state law to determine the right to fees and the method for calculating fees. *See Rodriguez v. Disner*, 688 F.3d 645, 653 fn. 6 (9th Cir. 2012) ("If…we were exercising our diversity jurisdiction, state law would control whether an attorney is entitled to fees and the method of calculating such fees"); *Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815, 827 (9th Cir. 2009) ("State law [also] establishes the required showing for attorney's fees in an action in diversity").

Here, Plaintiffs seek reasonable attorneys' fees and costs pursuant to several Labor Code statutes, including Labor Code Sections 1194 and 2699(g)(1), Section 216(b) of the FLSA, and Code of Civil Procedure Section 1021.5.  *See* Complaint ("SAC") at ¶¶33, 40, and 80 and Prayer for Relief No. 15.   Labor Code Section 1194 is a one-way fee shifting statute and Code of Civil Procedure Section 1021.5 is a private attorney general statute. *See, e.g., Aleman v. AirTouch Cellular*, 209 Cal.App.4th 556, 582 (2012) ("A prevailing defendant cannot recover fees in an action under section 1194"); *Parks v. Eastwood Ins. Servs., Inc.*, Case No. SA CV 02-507-GLT (MLGx), 2005 WL 6007833 at *2-3 (C.D. Cal. June 28, 2005) (in hybrid FLSA-California state law action, plaintiff's counsel was entitled to attorney's fees under California Code of Civil Procedure Section 1021.5); *Press v. Lucky Stores*, 34 Cal.3d 311, 317-318 (1983) ("The award of attorney fees is proper under [CCP] section 1021.5 if (1) plaintiffs' action has resulted in the enforcement of an important right affecting the public interest, (2) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons and (3) the necessity and financial burden of private enforcement are such as to make the award appropriate.") [internal quotations omitted].[1]

---

[1] These factors are met here.  First, the "substantial recovery" of unpaid wages furthers "the enforcement of an important right affecting the public interest" with respect to minimum labor standards concerning the payment of unpaid wages. *See, e.g.*, Cal. Labor Code § 90.5(a) ("It is the policy of this state to vigorously enforce minimum labor standards in order to ensure employees are not required or permitted to work under substandard unlawful conditions or for

NOTICE OF MOTION & MOTION FOR ATTORNEYS' FEES, COSTS, & INCENTIVE PAYMENTS

Under California law, "[w]hen a number of persons are entitled in common to a specific fund, and an action brought by a plaintiff . . . for the benefit of all results in the creation  . . . of that fund, such plaintiff  . . . may be awarded attorney's fees out of the fund." *See 21st Century Ins. Co. v. Superior Court*, 47 Cal.4th 511, 520 (2009).  In awarding attorneys' fees from a common fund, courts have discretion to employ either the percentage-of-recovery method or the lodestar method. *See In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 942 (9th Cir. 2011); *see also Adoma v. The University of Phoenix, Inc.*, 913 F. Supp. 2d 964, 981-982 (E.D. Cal. 2012) (applying percentage of recovery method in wage and hour action alleging violations of Labor Code and FLSA). Moreover, courts utilizing the percentage-of-the fund approach can use a lodestar as a "cross-check" on the reasonableness of the requested percentage award. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050-51 (9th Cir. 2002), *but see Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113, 1122 (C.D. Cal. 2008) ("A lodestar cross-check is not required in this circuit, and in some cases is not a useful reference point.").

In the Ninth Circuit, the typical range of reasonable attorney's fees is 20 to 33.3 percent of the total settlement value, with 25% considered a benchmark

---

employers that have not secured the payment of compensation, and to protect employers who comply with the law from those who attempt to gain a competitive advantage at the expense of their workers by failing to comply with minimum labor standards.").  Second, the relief obtained through the settlement confers a "significant benefit" on a "large class of persons." *See, e.g., Estrada v. FedEx Ground Package System, Inc.*, 154 Cal.App.4th 1, 16-17 (2007) (in class action brought under California Labor Code, court held that attorney fee award was warranted because "Estrada's personal motivation does not diminish the fact that he pursued this public interest class action not only for himself but on behalf of a class comprised of FedEx's past and present drivers and ultimately obtained awards for 209 drivers. [citations ommitted]  No more is required to satisfy the 'significant benefit,' 'public interest,' and 'large class of persons' requirements of [Code of Civil Procedure] section 1021.5.").  Third, and as explained in detail in Section III.B.7, *infra*, Class Counsel's lodestar establishes that "the necessity and financial burden of private enforcement are such as to make the award appropriate" because the financial burden this suit placed on Plaintiffs was out of proportion to their personal stake in the case. *See Baggett v. Gates*, 32 Cal.3d 128, 144 (1982).

NOTICE OF MOTION & MOTION FOR ATTORNEYS' FEES, COSTS, & INCENTIVE PAYMENTS

percentage. *See Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000); *Cicero v. DirecTV, Inc.*, Case No. EDCV 07-1182, 2010 WL 2991486 at *6 (C.D. Cal. July 27, 2010) [and cases cited therein].  The percentage applied in a particular case, however, depends on the facts of each case and "in most common fund cases, the award exceeds that benchmark" percentage. *See Knight v. Red Door Salons, Inc.*, Case No. 08-01520 SC, 2009 WL 248367 at *3 (N.D. Cal. Feb. 2, 2009); *see also In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377 (N.D. Cal. 1989) (stating that "nearly all common fund awards range around 30%"); *Chavez v. Netflix, Inc.*, 162 Cal.App.4th 43, 66 fn. 11 (2008) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery") [internal citation omitted]. Notably, "courts usually award attorneys' fees in the 30-40% range in wage and hour class actions that result in recovery of a common fun under $10 million." *See Cicero, supra,* 2010 WL 2991486 at *6.

Here, Class Counsel seek an award of 30% of the common fund based on (1) the substantial recovery obtained for the settlement class in the face of hotly disputed claims; (2) Class counsel's efforts in aggressively and diligently pressing the class claims forward; (3) Class counsel's skill and considerable wage and hour class action experience; (4) the complexity of the issues regarding the claims for unpaid wages; (5) the significant risk of non-payment due to Class Counsel taking this matter on a purely contingent basis; (6) the fact that not a single class member objected to the requested attorneys' fees and costs; and (7) because the requested fee request yields a modest 1.5 multiplier when compared to Class Counsel's lodestar. *See Craft*, *supra*, 624 F.Supp.2d at 1116-17 (C.D. Cal. 2008); *see also Vizcaino*, *supra*, 290 F.3d at 1048-1050 (in assessing whether percentage requested is fair and reasonable, courts generally consider the results achieved, the risk of litigation, the skill required, the quality of work performed, the contingent nature of the fee and the financial burden, and the awards made in similar cases).

**B.**     **The Requested 30% Attorney Fee Award is Justified.**

   **1.** **Class Counsel Obtained a Substantial Recovery for the Class.**

       Plaintiffs obtained a substantial recovery for the settlement class in the face of hotly disputed claims.  Indeed, Compass raised thirty-two affirmative defenses and planned to vigorously oppose any contested motion for class certification on the grounds that individual questions of fact would still predominate over their facially unlawful meal and rest period policies. *See, e.g., Ordoñez v. Radio Shack, Inc.*, Case No. CV 10-7060-CAS (JCGx), 2013 WL 210223 (C.D. Cal. January 17, 2013); *In re Taco Bell Wage & Hour Actions*, Case No. CV F 07–1314 LJO DLB, 2012 WL 5932833 (E.D. Cal. November 27, 2012); *Cummings v. Starbucks Corp. et al.*, Case No. CV 12-06345-MWF (FFMx) (C.D. Cal. March 24, 2014) (all denying certification of meal and/or rest period claims). Additionally, in the wake of the Supreme Court's decision in *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013), Compass argued that Plaintiffs could not certify any claims because proof of damages was too individualized. *See, e.g., Forrand v. Fed. Express Corp.*, Case No. CV 08-1360 DSF (PJWx), 2013 WL 1793951 at *2 (C.D. Cal. April 25, 2013). ("The Court further finds that, considering *Comcast* . . . [plaintiff] fails to meet the Rule 23(b)(3)'s certification standard."); *Buchanan v. Homeservices Lending, LLC*, Case No. 11cv0922 L(MDD), 2013 WL 1788579 at *6 (S.D. Cal. April 25, 2013) (relying on *Comcast* and denying certification of Labor Code §§ 221 and 2802 claims).

       Despite these obstacles, Plaintiffs secured a significant recovery for the settlement class.  As detailed in Plaintiffs' concurrently-filed Motion for Final Approval, this settlement compensates the class for their underpaid overtime wages, and provides additional, tangible compensation for hotly disputed meal and rest period claims and related penalty claims.  Indeed, the average settlement payment for members of the settlement class is $428.70, which is on par and also exceeds average settlement payments in similar wage and hour class action

settlements. *See, e.g., Casique v. ValleyCrest Landscape Development, Inc.*, Case No. CV09-9114 GHK (SSx) (C.D. Cal. November 2, 2011) (granting final approval of proposed class action settlement where average recovery to Settlement Class members was estimated at $345); *Jaime v. Standard Parking Corp.*, Case No. CV08-04407 AHM (Rzx) (C.D. Cal. June 22, 2011) (granting final approval of class action settlement based on average settlement class member recovery of $462.22); *Mora v. Bimbo Bakeries USA, Inc.*, Case No. CV 10-3748 JAK (RZx) (C.D. Cal. April 16, 2012) (granting final approval of settlement where average Settlement Class member recovery was $561.58); *Sorenson v. PetSmart, Inc.,* Case No. 2:06-CV-02674-JAM-DAD (E.D. Cal. December 17, 2008) (wage and hour class action settlement approved where average class member recovery was approximately $60)*; Barbosa v. Cargill Meat Solutions Corp.*, Case No. 1:11-cv-00275-SKD, 2013 WL 3340939 at *11-13 (E.D. Cal. July 2, 2013) (wage and hour class action settlement of $1,290,000 for 1,837 hourly employees yielded maximum settlement payment of $922.29 and average settlement payment of $601.91); *Schiller v. David's Bridal, Inc.*, Case No. 1:10-cv-00616-AWI-SKO, 2012 WL 2117001 at *17 (E.D. Cal. June 11, 2012) ("Plaintiff notes that Class Members will receive an average of approximately $198.70, with the highest payment to a Class Member being $695.78.  Plaintiff contends that this is a substantial recovery where Defendant asserted compelling defenses to liability; Plaintiff also notes several similar actions where the gross recoveries per class member were less than $90 . . . Overall, the Court finds that the results achieved are good"); *Williams v. Centerplate, Inc.*, Case Nos. 11-CV-2159 H-KSC, 12-CV-0008-H-KSC, 2013 WL 4525428 at *4 (S.D. Cal. August 26, 2013) (granting final approval of class action settlement where average recovery for each class member was approximately $108).

In light of this substantial recovery, Class Counsel has performed a valuable public service because "[p]ublic policy has long favored the full and prompt

payment of wages due an employee… [w]ages are not ordinary debts….[B]ecause of the economic position of the average worker and, in particular, his dependence on wages for the necessities of life for himself and his family, it is essential to the public welfare that he receive his pay promptly." *See Pressler v. Donald L. Bren Co.*, 32 Cal.3d 831, 837 (1982) (internal citations and quotations omitted). "California's labor statutes reflect a strong public policy in favor of full payment of wages for all hours worked." *See Armenta v. Osmose, Inc.*, 135 Cal.App.4th 314, 324 (2005). And given the relatively small individual amounts at issue, this settlement furthers public policy by using the class action procedure to provide redress to those individuals who would otherwise not be able to access the judicial system to recover their unpaid wages. As the Ninth Circuit recently stated in *Leyva v. Medline Industries, Inc.*, "In light of the small size of the putative class members' potential individual monetary recovery, class certification may be the only feasible means for them to adjudicate their claims." 716 F.3d 510, 515 (9th Cir. 2013).

**2.  Class Counsel's Efforts Support the Requested Fee Award.**

As detailed above in Section II.A, *supra*, Class Counsel diligently and aggressively litigated this case from the outset.  Class Counsel submits that their efforts led to a significant recovery for the settlement class, particularly in this complex action involving hotly disputed claims, by positioning the case towards an early class-wide resolution. *See, e.g., In re Activision Securities Lit.*, 723 F. Supp. 1373, 1378-79 (N.D. Cal. 1989) ("Therefore, this court concludes that in class action common fund cases the better practice is to set a percentage fee and that, absent extraordinary circumstances that suggest reasons to lower or increase the percentage, the rate should be set at 30%. This will encourage plaintiffs' attorneys to move for early settlement, provide predictability for the attorneys and the class members, and reduce the time consumed by counsel and court in dealing with voluminous fee petitions.").

NOTICE OF MOTION & MOTION FOR ATTORNEYS' FEES, COSTS, & INCENTIVE PAYMENTS

For instance, Class Counsel pressed the class claims forward by thoroughly researching and analysing the hotly disputed claims at issue, immediately conducting informal discovery and analysis, including the review analysis of timecard and payroll data for 411 members of the settlement class and thousands of documents.  Class Counsel also interviewed other non-exempt employees, met and conferred with Defendants regarding the scope of data needed for a class-wide mediation, and analysed voluminous payroll and timekeeping data to create damage models to estimate the amount of unpaid overtime wages, premium pay for meal and rest period violations, and penalties for wage statement and late payment violations, and civil penalties under PAGA.   Moreover, after the Court granted preliminary approval and notice was sent to the settlement class, Class Counsel communicated in English and Spanish with approximately seventy-five class members to answer their questions about this lawsuit, the proposed settlement, and their rights under the settlement.  The response from the settlement class members has been overwhelmingly positive.

   3.  **Class Counsel's Experience and Skill Also Support the Fee Award**.

Class Counsel possess significant wage and hour class action experience. *See* Section III.7.B.b, *infra*; *see also* DE No. 60 at 17:7-23.  Collectively, Class Counsel bring two decades of plaintiff and defense-side wage and hour class action experience pertaining to claims alleging overtime, meal and rest period, and related wage statement and final payment violations. Declaration of Hernaldo J. Baltodano ("Baltodano Decl."), ¶¶ 1-11; Declaration of Paul K. Haines ("Haines Decl."), ¶¶ 1-7.  They have been certified as class counsel in numerous other cases.  *Id.*  Moreover, Class Counsel is also culturally competent and respected by their colleagues, as evidenced by Mr. Baltodano's Spanish-speaking competencies and his recognition as a Super Lawyer in the area of employment litigation among Southern California attorneys.  Baltodano Decl., ¶¶ 3 & 11.  "All class counsel are qualified, experienced, and skilled attorneys, who prosecuted this action

effectively.  As a consequence, this factor weighs in favor of a generous fee award." *See Fernandez v. Victoria Secret Stores, LLC*, Case No. CV 06-04149 MMM (SHx), 2008 WL 8150856 at *12 (C.D. Cal. July 21, 2008).

   4. **The Complexity of the Issues Also Support the Fee Award.**

     This litigation involved complex and unsettled issues pertaining to liability regarding Compass' overtime and rest and meal period obligations under California law and the FLSA, as well as complex issues regarding the use of representative evidence, the imposition of penalties, and proving class-wide liability under *Brinker* and *Comcast*.  Among other things, Compass asserted that its safety bonuses were discretionary and need not be included in regular rate calculations.  Moreover, Compass asserted that, even if the bonuses were required for inclusion, their impact on wages was *de minimis*.  Compass also asserted that class certification was inappropriate because of the predominance of individual liability and damage issues.  Had Compass prevailed on any motion for class certification or motion for decertification, it was unlikely that members of the settlement class would have individually pursued their claims. *See*, *Leyva*, *supra*, 716 F.3d at 515 ("In light of the small size of the putative class members' potential individual monetary recovery, class certification may be the only feasible means for them to adjudicate their claims.").

     Because of the complexity of the issues in this case, an upward departure of the 25% benchmark is warranted because Plaintiffs pursued novel, yet meritorious claims concerning Compass' miscalculation of the regular rate of pay and meal and rest period practices, and tenaciously litigated the claims. *See, e.g., Murillo v. Pacific Gas & Elec. Co.*, Case No. CIV 2:08-1974 WBS GGH, 2010 WL 2889728 at *12 (E.D. Cal. July 21, 2010) (awarding multiplier of 1.5 because "This case contained multiple novel legal issues, including whether a payment of cash in lieu of health benefits needs to be included in the calculation of overtime under the FLSA"); *Adoma*, *supra*, 913 F. Supp. 2d at 983 ("It is important that labor and

NOTICE OF MOTION & MOTION FOR ATTORNEYS' FEES, COSTS, & INCENTIVE PAYMENTS

employment attorneys be rewarded for pursuing novel claims (so long as they are meritorious) and for litigating these claims with tenacity, rather than cherry-picking simple cases or settling difficult cases for small amounts").

### 5. **The Risk of Non-Payment Existed At All Times.**

"A contingent fee must be higher than a fee for the same legal services paid as they are performed.  The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services." *Graham v. DaimlerChrysler Corp.*, 34 Cal.4th 553, 580 (2004).  Here, Class Counsel took this matter on a purely contingent basis and have litigated this case for over a year on a purely contingent basis. Baltodano Decl., ¶ 35; Haines Decl., ¶ 15. Not only have Class Counsel rendered their services without any compensation, they have advanced all costs. *See id*.  Thus, because there was a real risk that they would not be compensated for their work, the requested fee award is appropriate. *See Barbosa*, *supra*, 2013 WL 3340939 at *16 ("Like this case, where recovery is uncertain, an award of one-third of the common fund as attorneys' fees has been found to be appropriate"); *Murillo*, *supra*, 2010 WL 2889728 at *12 ("Fee enhancements in contingency cases exists to compensate for the risk of loss inherent in such cases and create financial incentives for attorneys to take cases to protect important rights and goals, such as fair labor standards"); *Ketchum v. Moses*, 24 Cal.4th 1122, 1132-33 (2001) ("A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is only paid for the second of these functions.  If he is paid no more, competent counsel will be reluctant to accept fee award cases.") [internal citation omitted].

### 6. **The Reaction of the Settlement Class Is Positive.**

Notice of this proposed settlement, including the amounts requested for attorneys' fees, costs, and Plaintiffs' incentive awards, was mailed to 2,539 settlement class members.  Not a single class member filed an objection to the

requested fee award. Baltodano Decl., ¶ 34; Declaration of Ani Shirinian ("Shirinian Decl."), ¶ 18.  This factor also strongly supports the requested fee award.  *See, e.g., Thieriot v. Celtic Ins. Co.*, Case No. C 10-04462 LB, 2011 WL 1522385 at *6 (N.D. Cal. April 21, 2011)  ("The fact that no members of the 390–person class objected to the proposed 33% fee award—which was also communicated in the notice—supports an increase in the benchmark rate."); *McPhail v. First Command Fin. Planning, Inc.*, Case No. 05cv179-IEG-JMA, 2009 WL 839841 at *6 (S.D. Cal. March 30, 2009) ("The presence of a small minority of objectors strongly supports a finding that the settlement is fair, reasonable, and adequate.").

### 7.  Class Counsel's Lodestar Reflects a Reasonable Multiplier.

Although the Court is not required to conduct a lodestar cross-check, Class Counsel's lodestar also supports the requested 30% fee award.  As detailed below, because Class Counsel's lodestar is approximately $219,810, the 30% requested fee award should be approved because it reflects a reasonable multiplier of 1.5.

### a.  The hours expended on this litigation are reasonable.

To determine the reasonableness of Class Counsel's requested fee award, the Court should determine "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  Referred to as the "lodestar method," the California Supreme Court in the seminal case of *Serrano v. Priest* described it as follows:

> The starting point of every fee award, once it is recognized that the court's role in equity is to provide just compensation for the attorney, must be a calculation of the attorney's services in terms of the time he has expended on the case. Anchoring the analysis to this concept is the only way of approaching the problem that can claim objectivity, a claim

NOTICE OF MOTION & MOTION FOR ATTORNEYS' FEES, COSTS, & INCENTIVE PAYMENTS

which is obviously vital to the prestige of the bar and the courts.[2]

According to the United States Supreme Court, the court should include in any fee award all hours which were "reasonable expended." *See Hensley*, *supra*, 461 U.S. at 433.  Concurrently filed herewith are sworn declarations from Class Counsel, Hernaldo J. Baltodano and Paul K. Haines, attesting to (1) the experience and qualifications of the attorneys and paralegals who worked on this case, (2) those attorneys and paralegals' customary billing rates during this case, and (3) the hours reasonably expended by those attorneys and paralegals in prosecuting this case. *See Fernandez*, *supra,* 2008 WL 8150856 at *9, fn. 35.   Here, Class Counsel will have incurred at least 464 hours of attorney and paralegal time on this case through final approval, reflecting a lodestar of $219,810. *See* Baltodano Decl., ¶¶ 28-33; Haines Decl., ¶¶ 8-13.  "Where the lodestar method is used as a cross-check to the percentage method, it can be performed with a less exhaustive cataloguing and review of counsel's hours." *Barbosa*, *supra*, 2013 WL 3340939 at *19.   Although "the lodestar cross-check can be performed with a less exhaustive cataloguing and review of counsel's hours," *see Fernandez, supra,* 2008 WL 8150856 at *14, fn. 35, Class Counsel have nonetheless prepared attorney and paralegal time reports reflecting all hours spent to date working on this case and, if the Court deems it necessary, Class Counsel can make these reports available to the Court for an *in camera* review. Baltodano Decl., ¶ 30; Haines Decl., ¶ 10.

Class Counsel is entitled to be compensated for "every item of service which, at the time rendered, would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest." *See Moore v. Jas H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982); *see also Hensley, supra,* 461 U.S. at 431 (the appropriate number of hours includes all time "reasonably

---

[2] *See Serrano v. Priest*, 20 Cal.3d 25, 48 n.23 (1977) (hereinafter "Serrano III"), citing *City of Detroit v. Grinnel Corp.*, 495 F.2d 448, 470 (2nd Cir. 1974).

NOTICE OF MOTION & MOTION FOR ATTORNEYS' FEES, COSTS, & INCENTIVE PAYMENTS

expended in pursuit of the ultimate result achieved in the same manner that an attorney traditionally is compensated by a fee-paying client for all the time reasonably expended on the matter"). This includes the time spent preparing this motion for attorneys' fees. *See, e.g., In re Nucorp Energy, Inc.*, 764 F.2d 655, 659-660 (9th Cir. 1985) ("In statutory fee cases, federal courts, including our own, have uniformly held that time spent in establishing the entitlement to and amount of the fee is compensable").

As set forth in Class Counsel's concurrently-filed declarations , Class Counsel performed the following tasks, all of which were reasonably necessary in litigating this case against Defendants: pre-filing fact investigation and legal research and analysis; interviewing the named plaintiffs; performing on-going legal research and analysis regarding the certification of claims in light of *Dukes*, *Brinker,* and *Comcast*; translating pleadings and discovery requests from English to Spanish for Plaintiff Gonzalez; analysing Plaintiffs' payroll and records of hours worked; travelling to Los Angeles to attend mediation and court-hearings; discussing case strategy with the named plaintiffs on numerous occasions, both in-person and via telephone; reviewing 2,053 pages of documents and timecard reports and employee earning reports for 20% of the entire putative class; reviewing and analysing class-wide data produced by Compass; interviewing putative class members; preparing for the depositions of Compass' 30(b)(6) witnesses and the named plaintiffs; preparing for mediation and attending mediation; negotiating and drafting the proposed class action settlement; preparing the motions for preliminary and final approval of class action settlement and related memoranda; communicating in English and Spanish with approximately seventy-five class members about this lawsuit and the settlement administration process; monitoring the settlement administration process including, but not limited to, the review, analysis, and resolution of claim disputes and deficiencies; preparing the motion for final approval of class action

settlement; preparing this motion for attorneys' fees, costs, and incentive payment; and preparing for and attending the final approval hearing. *See* Baltodano Decl., ¶ 30; Haines Decl., ¶ 10.

The hours worked on this care are reasonable because Class Counsel believed the work to be "reasonably expended in pursuit of success at the point in time when the work was performed." *See Wooldridge v. Marlene Industries Corp.*, 898 F.2d 1169, 1177 (6th Cir. 1990) ("The question is not whether a party prevailed on a particular motion or whether in hindsight the time expenditure was strictly necessary to obtain the relief achieved.  Rather, the standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed.").  Surely, an opposite standard for determining "reasonableness" would put Class Counsel counsel in the precarious position of constantly second-guessing litigation strategy in a statutory fee case even though it would clearly be reasonable and in the best interests of the client for counsel to pursue the same litigation strategy for a fee-paying client. *See, e.g., Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ("[L]awyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees.  The payoff is too uncertain, as to both the result and the amount of the fee . . . the court should defer to the winning lawyer's professional judgment [regarding hours]; after all, he won, and might not have, had he been more of a slacker.").

**b.  <u>The Requested Hourly Rates are Reasonable.</u>**

To determine Class counsel's hourly rates, the Court should look to prevailing rates in the community for similar work performed by attorneys of comparable skill, experience, and reputation. *See Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210-1211 (9th Cir. 1986).   The Court can rely on its own familiarity with the legal market in determining the prevailing rate for similar work. *See Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).  The "relevant

NOTICE OF MOTION & MOTION FOR ATTORNEYS' FEES, COSTS, & INCENTIVE PAYMENTS

community" is typically the community in which the district court sits. *See*
*Schwarz v. Sec'y of Health & Human Services*, 73 F.3d 895, 906 (9th Cir. 1995).
Here, Class Counsel's request for attorneys' fees using a lodestar cross-check is
based on the following hourly rates: $600 for 12-year attorneys Hernaldo J.
Baltodano (Class of 2002) and Erica Flores Baltodano (Class of 2002), $500 for 8-
year attorney Paul K. Haines (Class of 2006), and $320 for 2-year attorney
Fletcher W. Schmidt (Class of 2012).  Class Counsel also request a billable hourly
rate of $175 for paralegals Alice W. Mitchell and Mai Suzuki.

Class Counsel submit that these hourly rates are reasonable based on Class
Counsel's skill, wage and hour class action experience, reputation, fee awards to
other attorneys of similar experience in the Central District of California, and the
Laffey Matrix. *See Blum v. Stenson*, 465 U.S. 886, 895 (1984) (lodestar should be
based on using hourly rates that are "the prevailing market rates in the relevant
community").  "Courts may find hourly rates reasonable based on evidence of
other courts approving similar rates or other attorneys engaged in similar litigation
charging similar rates." *See Parkinson v. Hyundai Motor Am.*, 796 F.Supp.2d
1160, 1172 (C.D. Cal. 2010).

As detailed in Class Counsel's supporting declarations and the declarations
submitted in support of Plaintiffs' motion for preliminary approval, Paul K.
Haines has extensive wage and hour class action experience, having handled
numerous wage and hour class actions at the national law firms of Littler
Mendelson and Morgan Lewis & Bockius LLP. *See* DE No. 18-2.   Hernaldo J.
Baltodano also has extensive wage and hour class action experience, having
handled numerous wage and hour class actions at the national law firm of Robins
Kaplan Miller & Ciresi LLP. *See* DE No. 18-1; Attachment No. 1.  Moreover, for
nine years, Thomson Reuters and Los Angeles Magazine recognized Mr.
Baltodano as a Top Young Attorney in Southern California in the annual Rising
Star Edition of Super Lawyer. Baltodano Decl., ¶ 3.  This is an honor awarded to

no more than two and a half percent of attorneys under the age of forty in Southern California each year.  *Id.*  In 2014, Thompson Reuters and Los Angeles Magazine recognized Mr. Baltodano as a Southern California Super Lawyer in the practice of employment litigation.  *Id.*  This is an honor awarded to no more than five percent of all attorneys in Southern California.  *Id.*

Courts in this district have approved similar hourly rates for attorneys with similar experience as Class Counsel.  *See, e.g., Gonzalez v. USF Reddaway, Inc.*, Case No. 5:10-CV-01514-AHM-OP (C.D. Cal. April 30, 2012) (approving hourly rate of $575 for an attorney with 10.8 years in practice in wage and hour class action settlement); *Castro v. UPS Ground Freight, Inc.*, Case No. CV 08-4898 ODW (CWx) (C.D. Cal. September 10, 2009) (approving hourly rate of $500 for 2003 law school graduate in wage and hour class action settlement for work performed in 2008); *Charlebois v. Angels Baseball LP*, Case No. SACV 10-0853 DOC (ANx), 2012 WL 2449849 at *5 (C.D. Cal. May 30, 2012) (in 2012, approving hourly rate of $450 for attorney with six years of experience for work performed in 2011); *Plows v. Rockwell Collins, Inc.*, Case No. SACV 10-1936 DOC (MANx) (C.D. Cal. August 6, 2012) (approving billable rate of $475 for 2004 law school graduate in wage and hour class action settlement for work performed in 2011).

Class Counsel's requested billable rates are also appropriate under the Laffey Matrix.  "One more general way to examine the reasonableness of hourly rates is to compare them to the Laffey Matrix, a widely recognized compilation of attorney and paralegal rate data used in the District of California, frequently used in fee award cases." *Bond v. Ferguson Enterprises, Inc.*, Case No. 1:09-cv-1662 OWW MJS, 2011 WL 2648879 at *12 (E.D. Cal. June 30, 2011).  The Laffey Matrix has been used in this district. *See*, *e.g.*, *Fernandez, supra,* 2008 WL 8150856 at *14 ("Here, it is plaintiffs who propose that the *Laffey* matrix be used to approximate the lodestar.  The court therefore accedes to their request.").  In

*Bond*, *supra*, the Court noted that an attorney with 8 to 10 years of experience as of 2011 commanded a billable rate of $522 according to the Laffey Matrix. *See* 2011 WL 2648879 at *12.  According to the Laffey Matrix, for the period June 1, 2013, to May 31, 2014, the hourly rate is $175 for a paralegal, $320 for an attorney who is 1 to 3 years out of law school, $567 for an attorney who is 8 to 10 years out of law school, and $640 for an attorney who is 11 to 19 years out of law school. *See* Baltodano Decl., ¶ 33 and Exh. B attached thereto [Laffey Matrix]. For these reasons, Class Counsel respectfully request that the Court approve the requested hourly rates of $600 for Hernaldo J. Baltodano and Erica Flores Baltodano, $500 for Paul K. Haines, $320 for Fletcher W. Schmidt, and $175 for paralegals Alice W. Mitchell and Mai Suzuki.

## c.  <u>The Lodestar Multiplier is also Reasonable.</u>

"It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *Fischell v. Equitable Life Assur. Society of U.S.*, 307 F.3d 997, 1008 (9th Cir. 2002).  Based on Class Counsel's hours and requested hourly rates, Class Counsel's lodestar is approximately $219,810. *See* Baltodano Decl., ¶ 29; Haines Decl., ¶ 9 [detailing hours spent by each attorney and paralegal].  Therefore, the requested 30% common-fund fee request yields a multiplier of 1. 5, which Class Counsel submit is reasonable given that lodestar multipliers range from 1.0 to 4.0. *See, e.g., Vizcaino*, *supra*, 290 F.3d at 1051 fn. 6 (finding that multipliers ranging from 1.0 to 4.0 are frequently awarded in common fund cases, with slightly over half of the cases surveyed awarding multipliers in the 1.5-3.0 range); *see also Fernandez*, *supra*, 2008 WL 8150856 at *16 (in awarding 34% of the common fund as attorneys' fees, which represented a 1.82 multiplier to the lodestar amount, court stated, "Both of these increases appropriately award class counsel for their risk in taking this case on a contingency basis and litigating the case with diligence and skill."); *McKenzie v.*

*Fed. Express Corp.*, Case No. CV 10–02420 GAF (PLAx), 2012 WL 2930201 (C.D. Cal. July 2, 2012) (awarding multiplier of 3.2 in class action settlement where plaintiff alleged violation of Labor Code Section 226); *Odrick v. Unionbancal Corp.*, Case No. C 10-5565 SBA, 2012 WL 6019495 at *6 (N.D. Cal. December 3, 2012) (approving  multiplier of approximately 1.95 of the lodestar because of the results class counsel achieved for the class); *Franco v. Ruiz Products, Inc.*, Case No. 1:10-cv-02354-SKO, 2012 WL 5941801 at *22 (E.D. Cal. November 27, 2012) ("Based on the overall success, the absence of opposition, and Class Counsel's well-documented hours worked in this action, Plaintiff's request for a multiplier of 1.31 of its lodestar is reasonable."); *Garcia v. Gordon Trucking, Inc.*, Case No. 1:10-CV-0324 AWI SKO, 2012 WL 5364575 at *10 (E.D. Cal. October 31, 2012) ("Based on the overall success, the skill with which the case was prosecuted, the substantial legal risks associated with Plaintiffs' claims, and the financial risks borne by Class Counsel, Plaintiff's request for a multiplier of 1.28 of its lodestar is reasonable.").

## IV.   PLAINTIFFS' LITIGATION EXPENSES ARE RECOVERABLE.

Class Counsel and Plaintiffs also seek, and Defendant does not oppose, a request for $20,000 in out-of-pocket costs incurred in litigating this matter. Again, not a single class member filed an objection to this settlement, including the requested $20,000 for reimbursement of costs. Baltodano Decl., ¶ 34; Shirinian Decl., ¶ 18.  Class Counsel's collective out-of-pocket costs are $19,640.67, and include filing fees, legal research expenses, copying costs, postage, federal express charges, mileage, and travel expenses for court hearings and mediation.  *See* Baltodano Decl., ¶ 31 and Exh. A attached thereto; Haines Decl., ¶ 11 and Exh. A attached thereto.  The litigation expenses by Class Counsel were reasonably incurred.[3]  Thus, the Court should grant the request for costs.

---

[3] *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (counsel should recover "those out-of-pocket expenses that would normally be charged to a fee paying client"); *see also Ashker v.*

## V.      THE INCENTIVE PAYMENTS SHOULD BE APPROVED.

Class Counsel, on behalf of Class Representatives Tacker and Gonzalez, requests a $5,000 incentive payment for each named plaintiff.  Not a single class member filed an objection to this request. Baltodano Decl., ¶ 34; Shirinian Decl., ¶ 18.  In *Gentry v. Superior Court*, the California Supreme Court acknowledged that an employer's current employees are unlikely to seek legal redress, stating, "retaliation against employees for asserting statutory rights under the [California] Labor Code is widespread," and, thus, "fear of retaliation for individual suits against an employer is a justification for class certification in the area of employment litigation." *See* 42 Cal.4th 443, 460 (2007); *see also Kasten v. Saint-Gobain Performance Plastics Corp.*, 131 S. Ct. 1325, 1333 (2011) (recognizing that "fear of economic retaliation" can force employees "quietly to accept substandard conditions").   Indeed, "it is the intent of the Legislature in section 1194 that minimum wage and overtime laws should be enforced in part of private action brought by aggrieved employees." *See Gentry*, 42 Cal.4th at 455-56.

Here, Plaintiffs filed this class action lawsuit to enforce California and the FLSA's wage and hour laws through private enforcement. *See* Declaration of Marlys Jean Tacker ("Tacker Decl."), ¶ 3; Declaration of Jenny Gonzalez ("Gonzalez Decl."), ¶ 3.  Plaintiff Tacker and Gonzalez each spent dozens of hours assisting Class Counsel in prosecuting this case.  Their efforts included contacting settlement class members, gathering documents for use in this lawsuit,

---

*Sayre*, Case No. 05–03759 CW, 2011 WL 825713 at * 3 (N.D. Cal. March 7, 2011) ("The costs of reproducing pleadings, motions and exhibits are typically billed by attorneys to their fee-paying clients" and are reimbursable); *Trustees of Const. Indust. & Laborers Health & Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1258-1259 (9th Cir. 2006) (legal research costs reimbursable); *In re Immune Response Securities Litigation*, 497 F. Supp. 2d 1166, 1177-1178 (S.D. Cal. 2007) (mediation expenses, consultant and expert fees, legal research, copies, postage, filing fees, messenger and federal express costs reimbursable); *Marhoefer*, *supra*, 24 F.3d at 19 (postage expenses reimbursable); *In re Mediation Vision Tech. Sec. Litigation*, 913 F. Supp. 1362, 1371 (N.D. Cal. 1996) ("A filing fee or serving fee is unquestionably a necessary expense of every litigation").

NOTICE OF MOTION & MOTION FOR ATTORNEYS' FEES, COSTS, & INCENTIVE PAYMENTS

meeting with Class Counsel on numerous occasions, strategizing with Class Counsel, preparing for their deposition, and communicating with Class Counsel during mediation. *See* Baltodano Decl., ¶ 12.  Plaintiffs Tacker and Gonzalez also bore the financial and reputational risks associated with wage and hour class action litigation, and executed a general release of claims.  Consequently, the Court may award an incentive payment to Plaintiffs Tacker and Gonzalez "to compensate [the] class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *See Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-959 (9th Cir. 2009); *see also Schiller, supra,* 2012 WL 2117001 at *23 (granting request for incentive payment based on class representative's efforts in assisting class counsel, class representative's general release of claim, and financial risk).

Moreover, the requested $5,000 incentive payments are not excessive; the amount constitutes less than 0.5% of the $1.1 million MSA. *See, e.g., Singer v. Becton Dickinson and Co.*, Case No. 08-CV-821-IEG (BLM) (S.D. Cal. December 9, 2009) (approving incentive payment constituting 2.5% of gross settlement fund); *Thieriot v. Celtic Ins. Co.*, Case No. C 10-04462 (LB), 2011 WL 1522385 (N.D. Cal. April 21, 2011) (approving incentive payment constituting 1.8% of gross settlement fund).  For these reasons, Class Counsel respectfully request that the Court grant the requested $5,000 incentive payments for Plaintiffs Tacker and Gonzalez.

///
///
///
///
///
///

NOTICE OF MOTION & MOTION FOR ATTORNEYS' FEES, COSTS, & INCENTIVE PAYMENTS

## VI.   CONCLUSION.

Class Counsel respectfully request that the Court grant the requests of $330,000 for attorneys' fees, $20,000 for costs, and $5,000 enhancement award to each named Plaintiff.

Dated:  April 14, 2014

Respectfully submitted,
BALTODANO & BALTODANO LLP

By:  _____
Hernaldo J. Baltodano, Esq.
Attorneys for Plaintiffs, the Classes and
Aggrieved Employees